36 N.J. Super. 234 (1955)
115 A.2d 626
GENERAL ELECTRIC COMPANY, PLAINTIFF-RESPONDENT,
v.
GEM VACUUM STORES, INC., A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 1955.
Decided June 15, 1955.
*235 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James R.E. Ozias argued the cause for plaintiff-respondent (Messrs. McCarter, English & Studer, attorneys).
Mr. Robert L. Hood argued the cause for defendants-appellants (Messrs. Kaplan and Poznak, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendants, Gem Vacuum Stores, Inc. and its alleged officers, appeal from an interlocutory injunctive order issued at the suit of the plaintiff, General Electric Company, enjoining certain merchandising practices on their part. They are charged with unfair competition.
Gem is in the business of selling vacuum cleaners at retail; and as may be taken from the affidavits submitted below by the parties, it has from time to time during 1954 advertised for sale, at about cost to it, plaintiff's vacuum cleaners, *236 Model C-1, describing them as "brand new" or "brand new in factory sealed boxes," though in fact they had theretofore been superseded by Model C-2. However, so plaintiff says (in its brief), essentially Gem's entire operations consist of the selling of vacuum cleaners at retail; and since doubtless each of Gem's prospects would buy only one cleaner, the advertisement of course must have been designed for some purpose other than to sell vacuums at cost.
In any event, the charge against defendants is that through this "bait advertising," they lured plaintiff's potential customers into making contact with them for purposes of "switch-selling" and so of pirating plaintiff's good will; that is, that by false and disparaging assertions on the part of defendants as to plaintiff's vacuums, many persons answering the advertisement were persuaded by defendants to buy from Gem, not plaintiff's, but another manufacturer's vacuum at a substantially higher price. Affidavits on defendants' behalf in opposition to those on plaintiff's behalf deny some charges of disparagement and certain other matters and also disclose that since September, 1953 Gem has purchased 1,400 of plaintiff's C-1 vacuums and has sold all but 300.
The rule is that an interlocutory injunction should not issue if plaintiff's asserted rights are not clear as a matter of law. Citizens Coach Co. v. Camden Horse R. Co., 29 N.J. Eq. 299 (E. & A. 1878), in laying out this proposition seems to have had in view rights cognizable in a law court, with which Chancery interfered only with diffidence. But under later cases the rule clearly is made to apply to all rights, whether equitable or legal in character. See Coles v. City of Newark, 95 N.J. Eq. 73, 76 (Ch. 1923), affirmed 95 N.J. Eq. 775 (E. & A. 1923); A. Hollander & Son, Inc., v. Jos. Hollander, Inc., 118 N.J. Eq. 262, 264 (E. & A. 1935); Sneath v. Lehsten, 120 N.J. Eq. 327, 333 (E. & A. 1936). The reason for the rule today doubtless lies in the fact that an interlocutory injunction is so drastic a remedy it should be withheld (the matter usually comes up on a motion day) when the law is in doubt and no opportunity is afforded for a full study of the matter by both sides.
*237 To this rule there are exceptions, as where the subject matter of the litigation would be destroyed or substantially impaired if a preliminary injunction did not issue. Christiansen v. Local 680 of Milk Drivers, etc., 127 N.J. Eq. 215, 220 (E. & A. 1939); Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163, 174 (App. Div. 1949); Naylor v. Harkins, 11 N.J. 435, 446 (1953). Further see Costello v. Thomas Cusack Co., 96 N.J. Eq. 83, 90 (Ch. 1924).
But this rule and the exceptions to it are not to be looked upon as hard and fast and sharply defined in scope; rather they are but factors, among others, which must be weighed, one with another, all going to the exercise of an exacting judicial discretion as to whether or not to issue a preliminary injunction. Restatement of Torts, §§ 933b, 936e.
We turn then to the legal issues here. They have been briefed as though they were governed by the common law; and even in that aspect of the matter, it must be conceded (and indeed is conceded by plaintiff in an interesting brief) that the "bait advertising" and "switch-selling" raise novel questions in this State. As to the matter of injunctive relief against disparagements, see in general Restatement of Torts, §§ 624-626, 633, 933c, 942d, 943b; note, 63 Yale L.J. 65, 96; Prosser, Torts, 1038 (1941); 2 Nims, Unfair Competition and Trade-Marks 827 (1947); Pound, 29 Harv. L. Rev. 640; Teller, 56 Harv. L. Rev. 180, 205; Black & Yates v. Mahogany Ass'n, 129 F.2d 227, 148 A.L.R. 841 (3 Cir., 1941); see Judge Jayne's opinion in American Shops, Inc., v. American Fashion, etc., Inc., 13 N.J. Super. 416, 421 (App. Div. 1951), referring to injunctive relief against disparaging the trade of a competitor. But see Voltube Corp. v. B. & C. Insulation Products, Inc., 20 N.J. Super. 250 (Ch. Div. 1951), citing New Jersey cases (but no cases from our appellate courts), 28 Am. Jur. 312, § 119 (but see the pocket supplement), and Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69 (Sup. Jud. Ct. 1873) (but see Menard v. Houle, 298 Mass. 546, 11 N.E.2d 436 (Sup. Jud. Ct. 1937)). See *238 Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227, 148 A.L.R. 853.
In this State the disreputable merchandising scheme alleged here, including (under the circumstances) the disparagements defendants are accused of, seem to be dealt with by statute. R.S. 56:4-1. But nowhere in the affidavits on which the injunction issued, is there any indication that plaintiff's vacuums carry the notice called for by the statute:
"No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals, or discriminate against the same by depreciating the value of such products in the public mind, or by misrepresentation as to value or quality, or by price inducement, or by unfair discrimination between buyers, or in any other manner whatsoever, except where such products do not carry any notice prohibiting such practices, and except in the case of a receiver's sale or a sale by a concern going out of business."
See R.S. 56:4-2; General Electric Co. v. Packard Bamberger & Co., 14 N.J. 209, 214 (1953). There seems to be no doubt but that defendants are being charged with having set about (in the language of the statute) to "appropriate for * * * their own use * * * [the] reputation or goodwill" of the General Electric Company "in whose products [Gem] deals"; and further to "discriminate against the same by depreciating the value of such products in the minds" of plaintiff's potential customers as well as "by misrepresentations as to value and quality" and by other means.
The parties have not dealt with the statute. But we need not pass upon its effect or upon the questions as to unfair competition raised here. Suffice it to say that in the face of the doubts as to the law, the interlocutory injunction with respect to these matters should not have issued under the particular circumstances presented.
One phase of the charge here seems not to be wholly covered by R.S. 56:4-1, namely, Gem's advertisements of the vacuums as "brand new" General Electric C-1 vacuums when in fact Gem knew or must have known the model was superseded. *239 Literally, there is no falsehood here; the article offered for sale was a brand new C-1 model. But the general public not being apt to know model numbers, and perhaps not stopping to think that there could well be a brand new superseded model, is, we may assume for purposes of discussion, likely to be misled by the advertisement. By a provision of the judgment below, such advertisements referring to brand new General Electric vacuums were enjoined unless they also stated that the model advertised had been "superseded."
This advertising is indeed incidental to the merchandising scheme alleged above, and it therefore in a way falls within the statute cited; but it seems also to go beyond it. Looked at by itself, the advertisement does not constitute an attempt by defendants to "appropriate for * * * their own use * * * good will" of General Electric Company or to "discriminate * * * by misrepresentation" (R.S. 56:4-1); it amounts simply to a deception of plaintiff's potential customers.
For authorities dealing with such deceptions, see Cheney Bros. v. Gimbel Bros., 280 F. 746 (D.C.S.D.N.Y., Augustus N. Hand, J., 1922); Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 1136, 91 L.Ed. 1386 (1947); Stahly, Inc. v. M.H. Jacobs Co., 183 F.2d 914 (7 Cir., 1950); B.V.D. Co. Inc. v. Davega-City Radio, Inc., 16 F. Supp. 659 (D.C.S.D.N.Y. 1936); Restatement of Torts, § 760; 1 Callman, Unfair Competition and Trade-Marks (2nd ed. 1950), § 20.2(a).
However, we need not consider these legal questions, except to note that under some authorities dealing with a case such as this, proof of injury is an element of the tort. Restatement of Torts, § 760. There would seem to be  the matter is not fully treated by plaintiff  two phases to plaintiff's claimed injury here.
First, plaintiff claims that through these advertisements there has been diverted from it trade which would otherwise come its way in the sale of its latest model. In that connection, it is alleged on defendants' behalf, and not denied, *240 that plaintiff continued through the spring of 1954 to sell Models C-1 through authorized dealers, well knowing they would be sold at less than the C-2 model (which was "fairtraded" at the retail level) and doubtless aware too that it would take some months for dealers, such as Gem, to market the superseded goods with the public. The last advertisement of Gem, referred to here, appeared October 21, 1954. If these be the facts, a question is raised as to whether plaintiff may claim relief for such an injury.
Second, plaintiff seems to suggest (though not too distinctly) that through these advertisements it suffered an injury to its business reputation and hence a loss in expectable future sales, all as a result of defendants' marketing of this old model, without recent improvements, as a brand new model. As to this, it appears from an affidavit submitted on defendants' behalf, and not denied by plaintiff, that the C-2 model is very little different in performance and general appearance from the C-1 model. Plaintiff says that the C-1 model was first put on the market in January 1953 and the C-2 model was first put out in December 1953. Defendants seem to suggest that the later model was marketed at that time (cf. General Electric Co. v. Packard Bamberger Co., 14 N.J. 209, decided December 21, 1953) as a separate model just to take advantage of the fair trade law.
Looking at the injunction as to these advertisements apart from R.S. 56:4-1 and the charges of unfair competition, we conclude the facts as to the claimed injury to the plaintiff are sufficiently in doubt for us to hold such relief not to be warranted at the suit of the plaintiff.
Reversed.