HAROLD KRIEGER, PLAINTIFF-RESPONDENT, v. CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued June 3, 1958—Decided June 27, 1958.

*Mr. James F. McGovern, Jr.,* argued the cause for defendant-appellant (*Mr. Ezra L. Nolan,* Corporation Counsel, attorney; *Mr. James F. McGovern, Jr.,* of counsel).

*Mr. Benjamin H. Chodash* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff sued to establish his right to the office of magistrate of the Municipal Court of Jersey City and to recover pay for the period following his purported ouster. The trial court found for plaintiff and the Appellate Division affirmed. 48 *N. J. Super.* 280 (1958). We granted defendant's petition for certification. 26 *N. J.* 169 (1958).

At the trial level the narrow issue was whether the city could terminate plaintiff's appointment during his term of office. Before the Appellate Division, defendant sought also to contend that the office of magistrate was never created,

and before us seeks to project still another issue, that pay must be denied for want of a salary ordinance.

■ The controversy turns upon the provisions of *chapter* 264 of the *Laws of* 1948. That act deals comprehensively with municipal courts and was designed to replace a haphazard set of local courts with a more effective system as part of a statewide judiciary, in implementation of the *Constitution of* 1947. *Board of Health, Weehawken Township v. New York Central Railroad Co.*, 10 *N. J.* 284, 289–290 (1952). Its provisions, as amended, appear in *N. J. S.* 2A:8–1 *et seq.*

*N. J. S.* 2A:8–1 provides that any municipality may by ordinance establish a municipal court. *Section* 15 of *chapter* 264 (in its later form it is *N. J. S.* 2A:8–2) ordained that existing police, magistrate and recorder's courts shall be continued until the expiration of the term of the holder of the judicial office or until December 31, 1948, whichever is later, "unless prior thereto the municipality has established a municipal court in accordance with the provisions of this act." On December 21, 1948 the city adopted an ordinance establishing the municipal court and providing for appointment of magistrates by resolution of the board of commissioners.

■ The ordinance was silent as to the number of magistrates. In fact Jersey City had had three magistrates for many years pursuant to express legislative action. *N. J. S.* 2A:8–5 provides that "Each municipal court shall have a judge" and *N. J. S.* 2A:8–6 provides that in a municipality having a population of more than 200,000 "the governing body * * * may provide for the appointment, as the need may appear, of not more than 3 additional magistrates of a municipal court of such municipality." The population of Jersey City exceeds 200,000. On January 18, 1955 the governing body adopted a resolution referring to *N. J. S.* 2A:8–6, reciting the need for a fourth magistrate and appointing plaintiff "a Magistrate of the Municipal Court of Jersey City for a term of three (3) years" effective at once.

This litigation was precipitated by a resolution of June 18, 1957 which stated that the conditions recited in the resolution of 1955 no longer obtained and that "for the reasons hereinabove stated and by reason of economy" the services of plaintiff and also of Magistrate Robert H. Wall "are no longer required and the best interests of the City of Jersey City will be served by their termination." It was thereupon

"RESOLVED that the appointments of Harold Krieger, as Magistrate of the Municipal Court of the City of Jersey City, and Robert H. Wall, as Magistrate of the Municipal Court of the City of Jersey City, be and the same hereby are terminated, effective immediately, and that all matters coming before the Municipal Court of the City of Jersey City be heard and determined by the remaining magistrates of the Municipal Court of the City of Jersey City."

Plaintiff was the senior judge in office and Wall was junior to the other magistrates. Insofar as plaintiff is concerned, the action is clearly arbitrary. If the power to terminate be assumed, still no warrant would exist to cut short the term of the senior incumbent. Defendant argues that since the resolution appointing plaintiff recited the need for a fourth magistrate because of litigation arising out of a building and redevelopment program and the enforcement of the local code, and since the terminating resolution found that particular need no longer existed, it was proper to eliminate plaintiff. But the occasion for plaintiff's appointment did not limit his authority to exercise the entire jurisdiction of the court. Notwithstanding the direction that the court sit in parts where there are two or more magistrates, *N. J. S.* 2*A*:8–19, all magistrates are equally members of the whole court. In fact, plaintiff's duties were not confined to the specific business described in the resolution.

We prefer, however, to consider the basic question whether there exists in the city the power to terminate the appointment of a magistrate, and in conjunction therewith we accept the additional question whether the office was lawfully created.

■ Defendant asserts the office of magistrate is a municipal office, citing expressions to that effect prior to the adoption of the *Constitution of* 1947 and the implementing legislation of 1948. *McCarthy v. Queen,* 76 *N. J. L.* 144, 152 (*Sup. Ct.* 1908), affirmed 76 *N. J. L.* 828 (*E. & A.* 1909); *Perry v. Bianchi,* 96 *N. J. L.* 113, 116 (*Sup. Ct.* 1921); *Rogers v. Taggert,* 118 *N. J. L.* 542, 545 (*Sup. Ct.* 1937), affirmed 120 *N. J. L.* 243 (*E. & A.* 1938). Whether that proposition remains valid under the 1948 act need not be considered since defendant asserts it preliminary to reliance upon *R. S.* 40:48–1, and we are satisfied that that statute is inapplicable even if the office is a municipal one.

*R. S.* 40:48–1 provides:

"The governing body of every municipality may make, amend, repeal and enforce ordinances to:
\* \* \* \* \* \* \* \*
3. Prescribe and define, *except as otherwise provided by law,* the duties and terms of office or employment, of all officers and employees; and to provide for the employment and compensation of such officials and employees, *in addition to those provided for by statute,* as may be deemed necessary for the efficient conduct of the affairs of the municipality \* \* \*." (Emphasis added)

It is evident on the face of this statute that the provision for the creation of local offices by ordinance is inapplicable where the office is created by the Legislature. *Daly v. City of New Brunswick,* 3 *N. J.* 397, 400 (1950); *Handlon v. Town of Belleville,* 4 *N. J.* 99, 108 (1950); *City of Jersey City v. Department of Civil Service,* 7 *N. J.* 509, 524 (1951); *Giannone v. Carlin,* 20 *N. J.* 511, 517 (1956).

■ Although there is left to local decision the question whether a municipal court shall be established, *N. J. S.* 2A:8–1, the statute itself creates the office of magistrate. *N. J. S.* 2A:8–5 peremptorily provides that "Each municipal court shall have a judge who shall be known as the municipal magistrate." The same section fixes the term of office and vests the appointing power in local government with respect to a court established by a single municipality,

and in the Governor with respect to a court established by two or more municipalities. The authority of the magistrate is delineated. Judges of the County Court are made *"ex-officio* judges of the municipal courts and any such judge or any superior court judge may be assigned by the chief justice of the supreme court to hold temporarily a municipal court, either with or without the magistrate of such court." *N. J. S.* 2*A*:8–11. The statute expressly directs action with respect to compensation. *N. J. S.* 2*A*:8–9. Thus the Legislature dealt with all attributes of the office. It left nothing for creative action under *R. S.* 40:48–1.

Nor can a distinction be drawn between the single magistrate referred to in *N. J. S.* 2*A*:8–5 and the additional magistrates "not more than 3" authorized in *N. J. S.* 2*A*:8–6. As to them as well, the Legislature fashioned the offices; it left to the governing body only the discretion to determine how many of the offices should be filled "as the need may appear." Hence, when defendant established the court the four offices came into being by virtue of the statute itself.

 Nor need the additional magistrates be appointed by ordinance. *N. J. S.* 2*A*:8–6, in authorizing the governing body to "provide for the appointment, as the need may appear," does not specify the mode of action. We see no reason to depart from the rule that where the statute is silent, the delegated power may be exercised by resolution or ordinance. *Howard v. Mayor and Board of Finance of City of Paterson,* 6 *N. J.* 373, 377 (1951); *Eggers v. Kenny,* 15 *N. J.* 107, 123 (1954).

Defendant is not aided by decisions antedating 1948 which held that a municipality could abolish the office of a police judge or recorder. *Shoemaker v. Township Committee of Centre Township,* 129 *A.* 432 (*N. J. Sup. Ct.* 1925); *Van Saun v. Township Committee of Pequannock,* 8 *N. J. Misc.* 486 (*Sup. Ct.* 1930); *Aronsohn v. Mayor and Council of Borough of Fort Lee,* 12 *N. J. Misc.* 557 (*Sup. Ct.* 1934); *Grippo v. Mayor and Council of Kenilworth Borough,* 12

*N. J. Misc.* 335 (*Sup. Ct.* 1934); *Jacoby v. Mayor and Council of Borough of Carteret,* 12 *N. J. Misc.* 199 (*Sup. Ct.* 1934). Those cases rested upon the thesis that the office was created by the municipality rather than by the Legislature, and therefore the municipality had the implied power to abolish what it created. See *Shoemaker, supra.*

■ Defendant did not seek to disestablish the municipal court (its power so to do is not here involved). Rather it sought to vacate an appointment to two of the statutory offices before the end of the incumbents' terms. *N. J. S.* 2A:8–5 provides that the magistrate "shall serve for a term of 3 years from the date of his appointment and until his successor is appointed and qualified." There is no express authority to reconsider the "need" for an additional magistrate during the prescribed term of office. For reasons already stated, reliance may not be placed upon the authority delegated by *R. S.* 40:48–1 to make and repeal ordinances creating offices.

In *Murphy v. Board of Chosen Freeholders of Hudson County,* 92 *N. J. L.* 244 (*E. & A.* 1918), an attempt was made to vacate an appointment to the legislatively established office of county counsel within the statutory term. The court unanimously held that the action of the board of freeholders was void for want of authority. A distinction may be suggested in the circumstance that here the city alleges a purpose to economize, but *Murphy* rests upon a determination as to power rather than motivation, and is pertinent unless we can find by necessary implication an intent to authorize termination for that special reason. The public, of course, is vitally concerned with the cost of government. But it is equally concerned with the integrity of the local courts. Their independence from local influence is furthered by security in office, and there can be no doubt from the preamble and overall provisions of the 1948 act that the Legislature intended to protect the local courts from political interference. *In re Klaisz,* 19 *N. J.* 145, 148 (1955). Weighing that security in office against economy during a relatively short term, a policy decision could readily

be struck in favor of the former. We have no reason to believe that the omission to grant authority to terminate the appointment for economy was other than deliberate, and hence we may not properly read into the act a delegation of the power for which defendant contends. *Cf. Beyer v. Township Committee of Tp. of Mount Holly, 6 N. J. Super.* 409 (*Law Div.* 1949).

▮ Defendant says that it is on the horns of a dilemma, that it needs but two magistrates and yet must forever continue with four, since *N. J. S.* 2*A*:8–5 provides that a magistrate shall serve "until his successor is appointed and qualified." The quoted phrase is designed only to assure that the office will be occupied pending the qualification of a successor. *N. J. S.* 2*A*:8–6 authorizes appointments of the additional magistrates "as the need may appear." If upon the expiration of the term of a magistrate the governing body should resolve that the need no longer appears, the incumbent would cease to hold office. This necessarily follows from the delegation of authority to determine the need as it "may appear" and does not conflict with the legislative purpose to assure judicial independence during the stipulated term of office.

▮ As stated above, defendant asks us to accept the further issue whether plaintiff should be denied pay because allegedly defendant failed to fix the magistrates' compensation by ordinance as required by *N. J. S.* 2*A*:8–9. We have heretofore expressed our willingness to accept issues first advanced on appeal where the expenditure of public funds is involved. *Howard v. Mayor and Board of Finance of City of Paterson,* 6 *N. J.* 373, 376 (1951). But there is nothing in the record to suggest the existence of the issue, and on the motion for summary judgment defendant agreed plaintiff was entitled to pay if the attempted ouster was invalid.

▮ Defendant says the absence of a provision for compensation suggests the service rendered was gratuitous, citing *Meyers v. Mayor and Council of the Borough of East Paterson,* 21 *N. J.* 357, 361 (1956). But *N. J. S.* 2*A*:8–9 provides that the magistrates "*shall* be compensated by an

annual salary to be paid by the municipality or municipalities wherein the court is located. The salary *shall* be fixed by ordinance adopted by the governing body of the municipality * * *." (Emphasis added) The Legislature plainly intended that magistrates be paid. It left to the governing body the decision as to the amount of compensation to be fixed by ordinance but the duty of the municipality to act is mandatory. *City of Jersey City v. Department of Civil Service, supra* (7 *N. J.,* at *page* 522); *Union Terminal Cold Storage Co. v. Spence,* 17 *N. J.* 162, 166 (1954). In short, defendant in effect asks that the cause be reopened to prove an alleged failure to comply with the statutory mandate. The request is extraordinary because it is coupled with a concession that defendant has done nothing to remedy the alleged failure and has paid and is still paying all of its magistrates (including plaintiff and Magistrate Wall since the Law Division judgments in their favor). Thus defendant seeks to have adjudged illegal a course of conduct in which it still persists. We are not persuaded that we should reopen the judgment to admit the alleged issue at this late stage.

The judgment is accordingly affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, FRANCIS and PROCTOR—5.

*For reversal*—Justice HEHER—1.