85 N.J. Super. 277 (1964)
204 A.2d 597
THOMAS S. HIGGINS, PLAINTIFF-RESPONDENT,
v.
GEORGE J. DENVER, RONALD C. SMITH, ARTHUR FIELD, JOHN HOPEN AND ROBERT BENSON, MEMBERS OF THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF GLOUCESTER; TOWNSHIP OF GLOUCESTER, A MUNICIPAL CORPORATION, AND SAMUEL W. STRAUSS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1964.
Decided October 29, 1964.
*278 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Neil F. Deighan, Jr. argued the cause for respondent.
Mr. Meyer L. Sakin argued the cause for appellants.
The opinion of the court was delivered by GAULKIN, S.J.A.D.
In this action in lieu of prerogative writs the Law Division held that plaintiff Thomas F. Higgins is entitled to the office of magistrate of the Municipal Court of Gloucester Township. Samuel W. Strauss, who claims the office, and the township appeal.
The case was presented to the Law Division upon a stipulation of facts which sets forth, in part, that:
*279 "Since January 1, 1959, the Township Committee of the Township of Gloucester was composed of a Democrat majority, with a Republican minority. On January 6, 1961, the said Democrat majority appointed one, Clarence Reberkenny, as Municipal Judge of said Township for a three year term to expire January 6, 1964. At the General Election held on November 5, 1963 two of the incumbent Democrat majority members were defeated by two Republican candidates, thereby causing a change in the political complexion to Republican control as of January 1, 1964, with three Republicans and two Democrats. Immediately before December 27, 1963, the said Clarence Reberkenny was asked to resign so that the said Democrat majority could perpetuate the position of Municipal Magistrate for its own political designee, and an appointment be made of Thomas S. Higgins for a three year term from said date; that the said Clarence Reberkenny accordingly submitted a resignation, effective as of December 27, 1963, which the then Democrat majority accepted and an appointment was then made of Thomas S. Higgins, effective as of December 27, 1963, for a term of three years. The said Clarence Reberkenny had received his salary to the end of his term and had made no refund for the unserved portion of his term; and the said Thomas S. Higgins assumed the duties of said office on December 30, 1963." (Emphasis ours)
Higgins was appointed by a vote of 4 to 1, the sole Republican (Field) voting "No."
The stipulation continues:
"George J. Denver and Ronald C. Smith took office as members of the Township Committee on January 1, 1964. On January 3, 1964, the Township Committee introduced a resolution revoking and rescinding the appointment of Thomas S. Higgins as Magistrate for the Township of Gloucester for three years; said resolution was adopted by a three to two vote, with George J. Denver, Ronald C. Smith and Arthur Field voting to revoke and rescind the appointment of said Thomas S. Higgins. Said resolution provides as follows:
WHEREAS, the appointment by resolution on December 27, 1963, by the Township Committee of the Township of Gloucester, of Thomas S. Higgins, as Municipal Judge, for period of three (3) years from said date, constituted an encroachment on the right of the public in the selection of its own officials, was improperly motivated, is without legal authority in law, and is, therefore, void;
NOW, THEREFORE,
BE IT RESOLVED * * * that the resolution * * * passed December 27, 1963, appointing Thomas S. Higgins as Municipal Judge of the Township of Gloucester, for the period of three (3) years from said date, be and the same is hereby rescinded."
On January 3, 1964 the township committee appointed Strauss as magistrate for a period of three years, commencing January 6, 1964.
*280 The township and Strauss contend that (1) the action of the "lame duck" majority constituted "unlawful behavior, bad faith and breach of public interest," and therefore the Higgins appointment was null and void, and (2) even if valid, the appointment could not have been for three years but only for the balance of Reberkenny's term, under R.S. 40:46-15, and, since that term ended January 6, 1964, Strauss was validly appointed and he is now the magistrate.
We hold that the appointment of Higgins, in the manner and under the circumstances here stipulated, was against public policy, and the Law Division should have set it aside.
To begin with, such manipulation of the judiciary cannot be tolerated. The township committee majority should not have asked for the magistrate's resignation for so base a reason  indeed, even an entire governing body, acting unanimously, may not do so.
"A magistrate does not exercise the `judicial' power, authority, or duty of a municipality. On the contrary, his court is an integral part of a state-wide judicial system, and the judicial power he exercises is the judicial power of the State. * * * [T]he power to appoint did not make the functions of a magistrate a phase of local government. * * *" Kagan v. Caroselli, 30 N.J. 371, 377, 379 (1959).
The public is vitally concerned with the integrity of the local courts and their freedom from political control. "Their independence from local influence is furthered by security in office, and there can be no doubt * * * that the Legislature intended to protect the local courts from political interference." Krieger v. Jersey City, 27 N.J. 535, 543 (1958).
In the case of In re Mattera, 34 N.J. 259, 275 (1961), the Supreme Court said:
"In many respects the municipal court is the most important in our judicial system. No other court can match its volume of causes. Our municipal courts dispose annually of approximately one and one-half million matters, a number which dwarfs the total proceedings in all other courts of the State. For all practical purposes, the judgments of the municipal court are final. It is there that most citizens have their sole exposure to the judicial process. The respect they have for *281 the judiciary hinges upon that experience. Thus the magistrate has a unique responsibility for the popular image of the entire system."
In In re Klaisz, 19 N.J. 145, 148 (1955), the court said:
"* * * The municipal court as an institution has made remarkable strides in the last seven years in earning the respect of the people in this State and as a result it has been entrusted with greatly enlarged jurisdiction not accorded to the justices of the peace, the police courts and other predecessor courts. N.J.S.A. Title 2A, chapter 8. This has been due in large part to the fact that the municipal magistrates have under the rules of court hereinabove cited preserved their independence of all other branches of the municipal government."
It would run counter to the public policy expressed in the statutes and in these cases if manipulations such as the one boldly confessed here were approved.
Added to the foregoing, we have the fact that it was not even the entire township committee that asked for the resignation of Reberkenny, but only a lame-duck majority who wished to keep the post in the hands of one of their political faith. In Cullum v. Board of Education of Tp. of North Bergen, 15 N.J. 285 (1954), the Supreme Court had before it a closely analogous set of facts, involving the appointment of a superintendent of schools. In that case the majority agreed privately on the choice of a superintendent, giving no thought to the qualifications of other candidates. The minority, hearing of it, boycotted a special meeting which the majority called to act upon the appointment. The court said:
"* * * instead of boycotting the public meeting the minority should have attended it. But, be that as it may, there still remains for determination the controlling legal issue as to whether the manner in which the board majority exercised the power of appointing a superintendent constituted official action which was taken arbitrarily or in bad faith and should, therefore, be set aside under the wholesome principles recently restated by this Court in Grogan v. DeSapio, 11 N.J. 308, 325 (1953). * * *
The members of the respondent board of education hold positions of public trust and must at all times faithfully discharge their functions with the public interest as their polestar. [citing cases] * * *. Amongst their most vital and responsible duties is the proper selection of personnel, * * *.
*282 * * * Although the meeting had been called to consider the appointment of a superintendent, there were no deliberations whatever and the public had no timely opportunity to be heard on the matter. And although the minority members, if they had attended, would presumably have had opportunity to speak before the vote was taken publicly, they likewise would have been faced with the fact that the majority had, in advance, agreed upon the appointee and signed the formal resolution of appointment.
The circumstances convince us that there was, in the language of Justice Burling in the Grogan case * * *, `a lack of exercise of discretion and an arbitrary determination.' At no time did the majority consider the needs of the local community, or seek to ascertain and evaluate the identities, qualifications and experience of the available candidates, or deliberate on the course best calculated to serve the local school system. On the contrary, they seem to have permitted extraneous personal and petty political influences to dictate their action. The open meeting they held was nothing more than a sham and, as Judge Hartshorne suggested in Grogan v. DeSapio, 15 N.J. Super. 604, 611 (Law Div. 1951), it ought be dealt with `as if it had never occurred.' The Legislature has unmistakably and wisely provided that meetings of boards of education shall be public (R.S. 18:5-47, N.J.S.A.); if a public meeting is to have any meaning or value, final decision must be reserved until fair opportunity to be heard thereat has been afforded. This in no wise precludes advance meeting during which there is free and full discussion, wholly tentative in nature; it does, however, justly preclude private final action such as that taken by the majority in the instant matter." (at pp. 292-4)
In Grogan v. DeSapio, 11 N.J. 308, 321 (1953), the Supreme Court said:
"* * * Further, we have held that arbitrary use of power contravenes fundamental law and is not within the legislative province; and where the discretion turned upon matters not contemplated by the law * * * there does not exist a bona fide exercise of the delegated legal discretion; and `Where there has been an abuse of discretion, the action may be vacated * * *.'"
For the foregoing reasons, we hold that the Higgins appointment was invalid and that defendant Strauss is the legally appointed magistrate of Gloucester.
This holding, plus the fact that the Legislature amended N.J.S. 2A:8-5 to provide that hereafter vacancies in the office of the magistrate may be filled "for the unexpired term only," make it unnecessary for us to decide whether R.S. *283 40:46-15 would have governed the Higgins appointment had his appointment been legal. Jacoby v. Brown, 55 N.J. Super. 469 (Law Div. 1959), is the only reported decision on the question. That decision was never challenged in any later reported case and therefore may have been relied upon by municipalities in filling vacancies in their courts. Since the question has now been settled by statute, and since a decision on the correctness of Jacoby v. Brown is not necessary for the determination of the issues in this case, we decline to pass on the question now.
The judgment is reversed.