36 A.3d 1075

KAREN BROWN, ESQ., PLAINTIFF–RESPONDENT, v. CITY OF PATERSON, A MUNICIPALITY OF THE STATE OF NEW JERSEY, AND JEFFERY J. JONES, AS MAYOR OF THE CITY OF PATERSON, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 24, 2012—Decided February 17, 2012.

Before Judges PAYNE, REISNER and SIMONELLI.

*Adam S. Herman* argued the cause for appellant (*Adams Stern Gutierrez & Lattiboudere, L.L.C.*, attorneys; *Derlys Maria Gutierrez*, of counsel and on the brief; *Mr. Herman*, on the brief).

*Aziz O. Nekoukar* argued the cause for respondent (*Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.*, attorneys; *Elnardo J. Webster, II*, of counsel; *Mr. Nekoukar* and *Ana J. Murteira*, on the brief).

The opinion of the court was delivered by

REISNER, J.A.D.

By leave granted, the City of Paterson appeals from an August 8, 2011 trial court order granting preliminary injunctive relief preventing the City from terminating plaintiff Karen Brown from her position as a municipal court judge pending the outcome of this litigation. Based on the record presented, we conclude that at the time the injunction was granted, plaintiff had demonstrated a likelihood of success on the merits, and it was in the public interest to preserve the status quo. We therefore find no abuse of the trial judge's discretion in granting preliminary injunctive

relief.[1]  In so ruling, we note that the case is apparently still at its inception, the parties have taken no discovery, and we imply no view as to how this case should be decided once the trial court record is complete.

I

We begin by considering the applicable statute, which specifically requires a municipality to obtain the approval of the vicinage Assignment Judge before appointing additional temporary or permanent municipal judges:

a.  With the written consent of the Assignment Judge of the vicinage, a county or municipality may:

(1) increase the number of judgeships of the municipal court, or

(2) appoint one or more temporary municipal judges.

b.  A temporary judge is an additional judge of the municipal court appointed to meet a special need of limited duration.  The procedure for appointment of temporary municipal judges shall be the same as that for other municipal judges, but each term of a temporary judge shall not exceed one year.

[*N.J.S.A.* 2B:12–5.]

*N.J.S.A.* 2B:12–5 has its origins in *N.J.S.A.* 2A:8–5a and –5b, which were enacted in 1985 to replace an older system in which a municipality was limited as to the number of judges it could appoint, depending on its population, and legislation was required every time a municipality wished to appoint an additional judge beyond that number.  *See N.J.S.A.* 2A:8–6 to –6.5;  Assembly Judiciary Committee Statement to Senate, No.1902 (November 8, 1984) (noting that "[p]resently if a municipality wishes to increase the number of judges authorized for its municipal court, legislation must be enacted").  The Legislature repealed the population-based system in favor of allowing municipalities to appoint "as the

---

[1] On September 16, 2011, after we granted defendant's motion for leave to appeal, the trial judge stayed the preliminary injunction pending the outcome of this interlocutory appeal.  Plaintiff did not move for leave to appeal from the stay, and the parties did not provide us with the record of defendant's stay motion, including the judge's statement of reasons.  Hence, the stay is not properly before us on this appeal.  On remand, plaintiff will need to file a motion before the trial court to vacate the stay.

need appears, ... any additional number of judges," *N.J.S.A.*
2A:8-5a, provided that "[n]o additional judge shall be appointed
... without the written consent of the assignment judge of the
vicinage." *N.J.S.A.* 2A:8-5b; *see L.* 1985, *c.* 46.[2] In 1993, the
Legislature adopted a comprehensive revision to the statutes
governing the municipal courts, codified in Title 2B. *See L.* 1993, *c.*
293. That revision included *N.J.S.A.* 2B:12-5, which retained the
requirement that the Assignment Judges approve the appointment
of additional municipal judges.

After the passage of the 1993 statute, Paterson adopted a 1995
ordinance continuing its municipal court and authorizing the ap-
pointment of five municipal judges, one of whom is the presiding
judge. *City Code* § 25-2B. The ordinance also permits the Mayor
and the Municipal Council to appoint temporary additional judges
"to meet a special need of limited duration pursuant to *N.J.S.A.*
2B:12-5(b)." *City Code* § 25-2C. We quote its provisions in full:

A.

The Municipal Court of the city, known as the "Municipal Court of the City of
Paterson," as heretofore established, is hereby continued.

B.

The Municipal Court shall consist of a Presiding Judge and four Judges.

C.

In addition, the Court shall consist of any temporary Judge appointed as an
additional Judge of the Municipal Court to meet a special need of limited duration
pursuant to *N.J.S.A.* 2B:12-5(b).

[*City Code* § 25-2, adopted June 13, 1995 by Ord. No. 95-034.]

On March 30, 2010, Manuel Quiles, Paterson's Municipal Court
Director, wrote to Thomas Jindracek, the vicinage Municipal
Division Manager, seeking the Assignment Judge's approval to
increase the number of municipal judgeships for the Paterson
Municipal Court, pursuant to *N.J.S.A.* 2B:12-5, in order to help

---

2 In effect, the numerical limits on the appointment of municipal judges, in
place just before the 1985 enactment, defined the status quo, from which the
municipalities could not then depart without the approval of the Assignment
Judges, as set forth in *N.J.S.A.* 2A:8-5a and -5b.

"reduce backlog in the face of increasing filings." In pertinent part, his letter reads as follows:

Please consider this a formal request per *N.J.S.A.* 2B:12-5 to increase the number of judgeships for the Paterson Municipal Court. At the present time there are five part-time judges, including the Chief Judge. The consent of the Assignment Judge is being requested to add a sixth part-time judge. This will allow the court to add four more sessions per week to the calendar.

In response, on March 31, 2010, the Assignment Judge wrote a letter to Paterson's then-Mayor, Jose Torres, approving the additional judgeship:

This will respond to the March 30, 2010 request pursuant to *N.J.S.A.* 2B:12-5 to increase by one the number of authorized judgeships for the Paterson Municipal Court. At the present time there are five part-time judges including the Chief Judge. Four additional sessions per week can be added to the calendar if the request is granted.

. . . .

I agree with your assessment that the addition of a judge coupled with added sessions will assist the Court in its ongoing effort to reduce backlog.

Therefore, I am authorizing the appointment of one additional municipal court judge.

Although neither the City's request nor the Assignment Judge's approval letter mentioned appointing a temporary judge, the City Council adopted a resolution on April 13, 2010, authorizing "the appointment of Karen Brown as a temporary judge of the Paterson Municipal Court pursuant to *N.J.S.A.* 2B:12-5." The resolution recited that "such appointment request has been approved by the Passaic County Superior Court Assignment Judge pursuant to *N.J.S.A.* 2B:12-5." The resolution also recited "that the duration of this appointment shall be until the permanent appointment of an additional Municipal Court judge or no longer than one (1) year from the effective date of this Resolution."

Brown was appointed on or about April 27, 2010.[3] After she had served for more than a year, the newly-elected Mayor, Jeffery Jones, wrote her a letter on June 27, 2011, advising her that her

---

[3] An April 27, 2010 letter from the vicinage Municipal Division Manager to the Chief of the Judicial Service Unit in the Administrative Office of the Courts, recited that a copy of Brown's judicial oath and the resolution were enclosed.

"appointment as a Temporary Municipal court Judge has expired" and her employment "as a Temporary Municipal Court Judge" would be terminated as of July 15, 2011. On July 11, 2011, Brown filed an emergent application for an order to show cause (OSC), seeking to retain her position in a permanent capacity and seeking preliminary injunctive relief. She contended that the City sought and obtained the Assignment Judge's permission to appoint a permanent, not temporary, municipal judge; that the language in the resolution that referred to a temporary appointment was erroneous as well as ultra vires; and that the resolution should be construed as authorizing a permanent appointment. Her application was supported by her certification attesting that the municipal court continued "to suffer a significant backlog and my improper termination as a Judge will only [exacerbate] an already struggling calendar."

At the oral argument of the OSC, the trial judge noted that by statute a temporary judge could only be appointed for a year, *N.J.S.A.* 2B:12-5b, and he expressed concern that by letting plaintiff continue in office for more than a year and then insisting that her appointment was only temporary, the Court was casting doubt on the validity of the "hundreds" of decisions she rendered after the one-year period had expired. He also expressed concern that the City's action could affect public confidence in the judicial system. He therefore stated that he would grant a temporary injunction pending the receipt of further briefing from the parties. The August 8, 2011 order granting preliminary restraints required the parties to file additional briefs by September 16 and 27, 2011. The City filed a motion for leave to appeal from the August 8 order, which we granted.

## II

We review the trial judge's decision to grant preliminary restraints for abuse of discretion. *Rinaldo v. RLR Inv., LLC,* 387 *N.J.Super.* 387, 395–96, 904 *A.*2d 725 (App.Div.2006). We bear in mind that deciding a preliminary injunction application "involves a

prediction of the probable outcome of the case" based on each party's initial proofs, usually limited to documents. *Id.* at 397, 904 *A.*2d 725. The court is not deciding which party ultimately wins or loses, but rather "whether the applicant has made 'a preliminary showing of a reasonable probability of ultimate success on the merits.'" *Id.* at 397, 904 *A.*2d 725 (quoting *Crowe v. De Gioia,* 90 *N.J.* 126, 133, 447 *A.*2d 173 (1982)).

■ The burden is on the party seeking temporary injunctive relief to show that he or she has "a reasonable probability of success on the merits; that a balancing of the equities and hardships favors injunctive relief; that the movant has no adequate remedy at law and that the irreparable injury to be suffered in the absence of the injunctive relief is substantial and imminent; and that the public interest will not be harmed." *See Waste Mgmt. v. Union County Utils. Authority,* 399 *N.J.Super.* 508, 519–520, 945 *A.*2d 73 (App.Div.2008) (citing *Crowe, supra,* 90 *N.J.* at 132–34, 447 *A.*2d 173); *Zon. Bd. of Adj. v. Serv. Elec. Cable T.V.,* 198 *N.J.Super.* 370, 379, 487 *A.*2d 331 (App.Div.1985).

■ While each of the above factors "must be clearly and convincingly demonstrated," a court "may take a less rigid view than it would after a final hearing when the interlocutory injunction is merely designed to preserve the status quo." *Waste Mgmt., supra,* 399 *N.J.Super.* at 520, 945 *A.*2d 73 (citing *Gen. Elec. Co. v. Gem Vacuum Stores, Inc.,* 36 *N.J.Super.* 234, 236–37, 115 *A.*2d 626 (App.Div.1955)). In exercising their equitable powers, courts " 'may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Id.* at 520–21, 945 *A.*2d 73 (quoting *Yakus v. United States,* 321 *U.S.* 414, 441, 64 *S.Ct.* 660, 675, 88 *L.Ed.* 834, 858 (1944)). In acting only to preserve the status quo, the court may "place less emphasis on a particular *Crowe* factor if another greatly requires the issuance of the remedy." *Id.* at 520, 945 *A.*2d 73.

■ Against that general background, we consider the law as it applies to this case. When considering issues relating to the terms of office of municipal judges, our courts have expressed particular concern to safeguard the municipal courts from political interference and preserve judicial independence. *Krieger v. Jersey City*, 27 *N.J.* 535, 543, 143 *A.*2d 564 (1958); *Higgins v. Denver*, 85 *N.J.Super.* 277, 280, 204 *A.*2d 597 (App.Div.1964); *Levine v. Mayor of City of Passaic*, 233 *N.J.Super.* 559, 563, 559 *A.*2d 485 (Law Div.1988), *certif. denied*, 117 *N.J.* 136, 564 *A.*2d 860 (1989). For those reasons, the courts have strictly construed statutes concerning the appointment of municipal judges.

In holding that a municipality could not terminate a municipal judge's appointment before his statutory term of office expired, the Supreme Court reasoned:

> The public, of course, is vitally concerned with the cost of government. But it is equally concerned with the integrity of the local courts. Their independence from local influence is furthered by security in office, and there can be no doubt from the preamble and overall provisions of the 1948 act that the Legislature intended to protect the local courts from political interference.

> [*Krieger, supra*, 27 *N.J.* at 543, 143 *A.*2d 564.]

Construing *N.J.S.A.* 2A:8–6, which at that time authorized a municipality to appoint up to three municipal judges in addition to the one "municipal magistrate" authorized in *N.J.S.A.* 2A:8–5, the Court held that a municipality had discretion as to the number of additional judges to appoint, but once an additional judge was appointed the municipality could not terminate the judge's appointment before his or her three-year term expired. *Id.* at 543–44, 143 *A.*2d 564.

*N.J.S.A.* 2B:12–4, like its predecessor, *N.J.S.A.* 2A:8–5, allows a permanent judge whose three-year term expires to remain in office "until a successor is appointed and qualified." In *Levine*, the municipality shortened a judge's term of office on reappointment by making it partially retroactive to the date when his prior term ended and he entered hold-over status. The court held that was ultra vires.

The operative language, "three years from the date of his appointment" is affected by the conjunctive phrase "and until the successor is appointed." This language clearly implies a legislative intent of service continuity. An independent judiciary could not survive without it.

. . . .

With this evident intent, it is clear that the local appointing authority must follow the literal language of the statute. Each appointment must be for three years. The continuity of office is assured via hold-over status—a legally operative position, which is time oriented. Actions taken by the court during this period are valid. [*Levine, supra,* 233 *N.J.Super.* at 563, 559 *A.*2d 485 (footnotes and internal citations omitted).]

The court also opined that because the judge was authorized to act as a hold-over there was "no need to cover the hold-over period with a retroactive appointment." *Ibid.* Finding that the municipality's "principal object" was to appoint a municipal judge and that the unlawful term limitation could be severed from the rest of the resolution, the judge construed the ordinance as appointing the plaintiff "for a term of three years from the date of his appointment." *Id.* at 565–66, 559 *A.*2d 485.

To further ensure the independence of the local courts, the "administrative control of municipal courts rests in the Supreme Court, which has directed the Chief Justice to designate an Assignment Judge for each vicinage responsible for administration of all courts therein, including municipal courts." *State v. Garcia,* 297 *N.J.Super.* 108, 124, 687 *A.*2d 804 (Mun.Ct.1996) (citing *Kagan v. Caroselli,* 30 *N.J.* 371, 377, 153 *A.*2d 17 (1959)); *R.* 1:33–1; *R.* 1:3–4. The Supreme Court has recognized that the municipal court has made

remarkable strides . . . in earning the respect of the people of this State. . . . This has been due in large part to the fact that the municipal magistrates have under the rules of the court . . . preserved their independence of all other branches of the municipal government.

[*Higgins, supra,* 85 *N.J.Super.* at 281, 204 *A.*2d 597 (quoting *In re Klaisz,* 19 *N.J.* 145, 148, 115 *A.*2d 537 (1955)).]

The statutory requirement that a municipality obtain the "written consent of the Assignment Judge" must be read within the context of Title 2B's overall statutory framework as well as the Legislature's objective to limit the involvement of the local author-

ity in setting a municipal judge's term of office. *Krieger, supra,* 27 *N.J.* at 541, 143 *A.*2d 564 (stating, "it is evident . . . that the provision for the creation of local offices is inapplicable where the office is created by the Legislature").

*N.J.S.A.* 2B:12–5a provides that the Assignment Judge's approval is required to either (1) expand the number of judgeships of the municipal court, or (2) appoint one or more temporary municipal judges. Therefore, if the municipality seeks to appoint an additional judge under *N.J.S.A.* 2B:12–5a(1), the appointment will be a permanent one having a mandatory statutory three-year term of office. *See N.J.S.A.* 2B:12–4a. Otherwise, the appointment will be temporary and shall not exceed one year. *See N.J.S.A.* 2B:12–5b. The scope of the Assignment Judge's consent under *N.J.S.A.* 2B:12–5a covers both the number of additional judges requested as well as their specific terms of office, because the term of office is defined in the position requested.[4]

Once consent is granted, the municipality may not appoint an additional municipal court judge other than as authorized in writing by the Assignment Judge. *N.J.S.A.* 2B:12–5a. Thus, if the Assignment Judge permits appointment of a judge under *N.J.S.A.* 2B:12–5a(1), he or she has provided consent to the municipality to appoint an additional permanent judge for a three-year term. By its terms, Title 2B does not give a municipality discretion to first obtain written consent from the Assignment Judge for a *N.J.S.A.* 2B:12–5a(1) permanent appointment and then unilaterally appoint a temporary judge under *N.J.S.A.* 2B:12–5a(2). Without the written consent of the Assignment Judge, a

---

4 Since the statute, *N.J.S.A.* 2B:12–5a, is silent as to whether an ordinance or a resolution is needed to appoint the additional judge authorized by the Assignment Judge, "the delegated power [to appoint the judge] may be exercised by resolution or ordinance." *Krieger, supra,* 27 *N.J.* at 542, 143 *A.*2d 564; *see also N.J.S.A.* 2B:12–4b. Further, "in exercising the appointive power, the governing body acts merely as a statutory agent." *Kagan, supra,* 30 *N.J.* at 379, 153 *A.*2d 17. Therefore, when the Assignment Judge authorizes appointment of an additional municipal judge, that statutory authorization trumps the local ordinance setting the number of municipal judges.

municipality cannot appoint an additional temporary municipal court judge. *N.J.S.A.* 2B:12–5a; *see Amerada Hess Corp. v. Dir., Div. of Tax.,* 107 *N.J.* 307, 321, 526 *A.*2d 1029 (1987) (effect should be given to every word in a statute).

To find otherwise, would be inconsistent with the Court's holding that *N.J.S.A.* 2B:12–4a proscribes municipalities from altering the statutory term of office for municipal court judges. *Krieger, supra,* 27 *N.J.* at 543, 143 *A.*2d 564; *Levine, supra,* 233 *N.J.Super.* at 563, 559 *A.*2d 485. Further, such an interpretation would suggest that a local governing authority may appoint an additional municipal court judge without the express written consent of the Assignment Judge required under *N.J.S.A.* 2B:12–5a.

Based on the record thus far presented to us, we conclude there is a preliminary basis to find that when the City requested permission to appoint "a sixth part-time judge," it was seeking authorization to make a permanent appointment, and that was what the Assignment Judge authorized. Discovery may reveal otherwise, but that appears to be the most reasonable construction of the factual record that was before the trial judge when he issued the preliminary injunction. If that was so, the City had no authority to appoint a temporary municipal judge, absent an additional request to the Assignment Judge and his additional approval. Further, if the City acted contrary to the Assignment Judge's approval, the trial court may well determine, pursuant to *Levine,* that the temporary aspect of Brown's appointment should be severed from the resolution, leaving her with a permanent appointment.

Of course, discovery may change the factual and legal posture of this case. There may, for example, be internal documents from the Paterson Municipal Court or from the Mayor's Office that gave rise to Manager Quiles' request and shed light on what the City intended to request. There may also be documents in the Municipal Division Manager's office that shed light on the vicinage's view of whether the request was for a permanent or temporary appointment. *See AOC Administrative Directive, # 4–*

97, "Additional and Temporary Municipal Court Judges" (April 22, 1997). Like the trial court, we can only decide this appeal on the record before us now.

An illegal attempt to cut short the tenure of a permanent municipal judge threatens judicial independence. *Krieger, supra,* 27 *N.J.* at 543–44, 143 *A.*2d 564. Therefore the public interest strongly favors preserving the status quo by maintaining the judge in office pending resolution of the litigation. *See Waste Mgmt., supra,* 399 *N.J.Super.* at 520–21, 945 *A.*2d 73. On this record, we cannot conclude that the trial court abused its discretion in entering a preliminary injunction to preserve the status quo pending its final decision in this case, and therefore we affirm.

Affirmed.