Clarke v. Trenton.

THE STATE, EX REL. ANDREW M. CLARKE, v. THE BOARD OF HEALTH OF THE CITY OF TRENTON.

1. When a municipal office is to be filled by appointment of the mayor and confirmation of the council, and the charter provides that whenever the mayor shall be prevented, by absence from the city or other specified causes, from attending to the duties of his office, the president of the council shall act as mayor, with all the rights and powers of the mayor—*Held*, that proof of an appointment by the president of council, claiming to act as mayor, and confirmation by council, will not be sufficient to establish title to the office, but it must further appear that the facts existed upon which the right of the president of council to nominate arose.

2. The writ of *mandamus* will not issue to seat a person in an office, even on proof of a *prima facie* title thereto, if it appears that his title is such that if seated he must be ousted from his seat upon a contest.

Andrew M. Clarke was allowed a rule to show cause why the board of health of the city of Trenton should not admit him as a member. The rule has been brought to hearing, on affidavits, &c., from which the following facts appear:

The board of health is organized under an ordinance passed July 11th, 1882. The ordinance prescribes that it shall be composed of seven members, nominated by the mayor and approved by the common council, of whom some are to serve for three and some for four years. It provides that in all cases members are to serve until their successors are appointed and qualified.

On July 19th, 1882, William Cloke was appointed a member, to serve for four years. On July 20th, 1886, Cloke was renominated by the mayor, but was not confirmed.

On August 6th, 1886, the city clerk gave the following to John W. Brooke, president of the common council:

"OFFICE OF CITY CLERK, CITY HALL,
"TRENTON, N. J., Aug. 6th, 1886.
"*Hon. John W. Brooke, President of Common Council:*
"DEAR SIR—His Honor Mayor Woolverton having left

the city for a short period, desires me to inform you of that fact, and to take charge of the business pertaining to the office during his absence.

"Respectfully yours,

"ECKFORD MOORE,
"City Clerk."

On the same day, Brooke laid before the common council, at a special meeting which had been called on August 3d, the following:

"MAYOR'S OFFICE, TRENTON, N. J.,
"Aug. 6th, 1886.

"To the Honorable the Common Council:

"GENTLEMEN—In the absence from the city of his Honor Mayor Woolverton, and at his request that I take charge of the business pertaining to the office during his absence, of which I have been this day duly advised by the city clerk, I hereby, in accordance with the provisions of the fifth section of 'An ordinance establishing and concerning a board of health,' approved July 12th, 1882, nominate Andrew M. Clarke as a member of the board of health, to fill the vacancy caused by the expiration of the term of William Cloke.

"Respectfully,

"JOHN W. BROOKE,
"President of Council, acting as Mayor."

The nomination so made was confirmed, and Clarke qualified late the same night.

On August 17th the board of health met, Cloke being present and acting as a member. Clarke then presented to the board the following:

"This certifies that Andrew M. Clarke was, on the 6th day of August, 1886, elected, by the common council, a member of the board of health of the city of Trenton.

"Witness my hand, this 6th day of August, 1886.

"ECKFORD MOORE,

[L. s.]     "City Clerk."

And asked the board to admit him as a member. He testifies that the president of the board told him that the certificate was no evidence, and he then asked if he could produce the minutes of the council, but the president refused to receive them.

The board voted against his admission.

By section 34 of the charter of Trenton (*Pamph. L.* 1874, *p.* 331), it is provided "that whenever there shall be a vacancy in the office of mayor, or whenever the mayor shall be prevented, by absence from the city, sickness or other cause, from attending to the duties of his office, the president of the common council shall act as mayor, and possess all the rights and powers of the mayor during the vacancy in office caused by the absence or disability of the mayor."

The city clerk and others present, at an interview between him and the mayor, on the morning of August 6th, testified that the mayor said he intended to leave Trenton, about noon, for an absence of some days. The mayor denies having said so.

The mayor testifies, and others corroborate him, that he was not, in fact, out of the city of Trenton, or disabled, from any cause, from performing the duties of his office, on the day and at the time the nomination was made.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the rule, *William Y. Johnson.*

*Contra, James Buchanan.*

The opinion of the court was delivere l by

MAGIE, J. The first question presented relates to the propriety of issuing a *mandamus*, under the circumstances disclosed.

Although the four years for which Cloke was appointed have expired, it is clear, in my judgment, that he remains a

member of the board, *de facto et de jure*, until his successor has been appointed and qualified. If the act of February 28th, 1881 (*Pamph. L., p.* 47), which provides that certain city officers shall continue to hold their offices, although the time for which they were appointed has expired, until their successors have been appointed and qualified, does not apply to such an office, yet the terms of the ordinance under which Clarke claims expressly provide for the same continuance in office, and there seems to be no ground for contending that if the ordinance is within the power of the council, this mode of holding office may not be prescribed.

There is, therefore, no vacancy in the office (*Stilsing* v. *Davis*, 16 *Vroom* 390), but a contest between Clarke, who claims to have been duly appointed, and Cloke, who claims that Clarke has not been duly appointed, and therefore that he remains in office.

Under such circumstances I find a great preponderance of authority against the issuing of this writ. Opinions have been expressed in this court to that effect, but in cases where the opinion was not necessary to the decision. *Bradshaw* v. *Camden*, 10 *Vroom* 416 ; *O'Donnel* v. *Dusman*, 10 *Vroom* 677. The text-books on the subject approve this view. It is clear that to issue the writ is to try and to determine the title to an office without affording an opportunity to one of the claimants to be heard in defence of his right.

But this court has enunciated a contrary doctrine, and has held that members of a public body, holding over until their successors are elected and qualified, are not officers *de facto* in such a sense that a *mandamus* should not be allowed. *State, ex rel. Love,* v. *Freeholders,* 6 *Vroom* 269. We are, of course, bound by that authority, and the writ may issue if a proper case has been made.

The claim on behalf of Clarke is that the *mandamus* asked for must issue, because he has shown a nomination by the president of council, claiming to be acting mayor, and a confirmation by council. It is insisted that he thus shows a *prima facie* title, which must be conclusive on this applica-

tion because the proceedings giving him title cannot be attacked collaterally.

The charter has not provided for the issuing of a commission or a certificate of appointment of a member of the board of health, nor has it declared what shall be evidence of the title to such an office. The case differs from those where the contest relates to an election when the law provides that the certificate of an election board or board of canvassers shall be evidence of the result. Therefore the certificate of the clerk, presented by Clarke to the board of health—apart from the fact that it certified to an election by council when the office was not capable of being filled by election—had no force as evidence. Nor would the minutes of council have proved more than the act of that body. The evidence of title would seem to consist of the communication whereby the nomination was made, and the minutes of council containing the vote of confirmation.

In passing, it may be observed that Clarke, when he demanded his seat, did not lay before the board of health this evidence of his title. Much strictness has been insisted on, in some cases, in respect to the demand necessary to sustain an application for *mandamus*. Perhaps the better opinion is that a claimant to a public office will not be held to a strictly formal demand. *High on Ex. Rem.*, §§ 13, 41. No opinion is designed to be expressed on this subject, for no objection has been made on this ground to the consideration of the case, and it seems clear that Clarke's claim was understood and refused with a full knowledge of his title. The case will, therefore, be treated as if the title on which Clarke relies was before the board.

The contention that a nomination by an acting mayor and a confirmation by council make out a title which we must accept as conclusive on this application, cannot, in my judgment, be sustained. If the charter provided for issuing a commission or certificate evidencing a right to membership in the board of health, such a contention might be sustained. Perhaps an appointment by the mayor and confirmation by

council might constitute a conclusive title; for the official station of the mayor creates, *ipso facto*, his official power to nominate. But the president of the council derives his right to nominate, not alone from his official station, but also from the existence of one of certain specified contingencies. In the absence of any such contingency he has no more right to nominate than a private citizen, and his act in nominating would be a mere nullity. The charter makes no provision, as perhaps might be judiciously done, for establishing the existence of such a contingency as would confer power on an acting mayor.

In these circumstances, what proof is required to establish a title to office acquired by such an appointment? Neither the researches of counsel nor my own examination have disclosed any adjudged case bearing on the subject. But looking at the fact that the authority of an acting mayor depends on an antecedent condition, I have been led to the conclusion that to establish a title to office derived from his nomination, his right to nominate must be first proved. The result of this conclusion will be to discharge the rule—for, as will appear, the title of Clarke has not been thus proved.

But if my conclusion on this subject is erroneous, I still think that no *mandamus* should issue on Clarke's application.

It is, in my judgment, beyond dispute, that Brooke, the president of the council, was not invested with authority to nominate on August 6th. The contention that the whole proceeding was a fraudulent usurpation of power has not been made out. I have no doubt that the official who addressed the communication to the president of the council honestly believed what he stated therein. It is the common case of a misunderstanding of what was said. But whatever was understood as to the mayor's intentions, the fact is clearly made out that when Clarke's nomination was made, the mayor was not absent from Trenton, nor in any way disqualified from performing the duties of his office. Therefore the nomination of Clarke by the president of the council, and the confirmation of the nomination by the council, were nullities.

The exercise of the power to issue this extraordinary writ rests in the sound discretion of the court, subject to well-settled principles established by the courts. Cases like this are not found, for the reason, I apprehend, that relief in such case is usually sought by the writ of *quo warranto*. But analogous cases are found which settle the principles which ought to be applied to this.

The writ of *mandamus* is issued to admit to office not only a person who claims a right by election or appointment, but also one who, having been admitted by election or appointment, has since been improperly removed. *High on Ex. Rem.*, §§ 67, 72; *Moses on Mand.* 129. The charge of improper amotion from office may be based on the lack of good cause or the want of proper formalities, such as notice, opportunity to be heard, &c. It may, therefore, well be that a good cause for amotion existed, yet that the removal was erroneous because no notice was given, &c. But in such cases it is well settled that a *mandamus* to restore to office will not issue, notwithstanding the applicant has a perfect title. *High on Ex. Rem.*, § 70; *Rex* v. *Campion*, 1 *Sid.* 14; *Rex* v. *Axbridge, Cowp.* 523; *Rex* v. *Newcastle, Bull. N. P.* 207. In *Rex* v. *Bristol*, 1 *Dowl. & Ry.* 389, a case of this sort was dealt with, and the court said: "It would be a very extraordinary proposition if the court thought itself warranted in commanding a corporate body to restore a person to office from which they had removed him from what appeared to them to be a sufficient cause, when the very next moment they might exercise the same right on precisely the same grounds."

The analogy of these cases is, I think, complete. If Clarke's appointment can be questioned by *certiorari*, it would, on the facts here appearing, be set aside as invalid. Cloke, so long as no successor to him is legally appointed, and his successor, if one be legally appointed, might, by *quo warranto*, dispute and overcome Clarke's alleged title to office, and oust him from the seat in which we are asked to install him. What we are called on to do, therefore, is to exert this extraordinary power of the court to seat an intruder

in office, who, when the facts now appearing shall be presented in one or the other of these modes, will lose his title and be ejected. Under such circumstances, it seems to me to be idle to argue that it would be an exercise of sound discretion to issue a *mandamus*.

The rule to show cause must therefore be discharged, with costs.