## CARRIE L. HARRISON v. THE BOROUGH OF MADISON.

Submitted December 1, 1910—Decided January 6, 1911.

The act of the president of a borough council in approving a public ordinance during an interim in the office of mayor is that of a *de facto* officer, affecting the public, that upon principles of public policy will be held to be valid regardless of his *de jure* rights derived from the Borough act.

On *certiorari.*

Before Justices GARRISON, SWAYZE and VOORHEES.

For the prosecutor, *Sommer, Colby & Whiting.*

For the defendant, *Charles A. Rathbun.*

The opinion of the court was delivered by

GARRISON, J. This *certiorari* attacks an ordinance providing for the construction of sidewalks in the borough of Madison, passed by the requisite majority of the borough council and approved by George W. Downs, "President of the Council, Acting Mayor."

The ground of attack is that Downs was not "Acting Mayor," and the basis of this contention is the fact that the office of mayor was vacant owing to the death of the duly-elected mayor.

Section 25 of the Borough act (*Pamph. L.* 1897, *p.* 285) provides as follows: "In case of the Mayor's absence from the Borough for a period of three days, or in case of his inability to act by reason of sickness or *other cause,* the President of the Council shall perform all the duties of the Mayor during such absence or inability."

It is contended, and the argument is legitimate if stress is to be laid upon the nice use of words, that this section contemplates a mayor in being capable of absenting himself and liable to sickness and to inability from causes affecting his performance of duties he otherwise would perform.

The mischief, however, at which the section was aimed, was the lapse of an official function, and in this view the remedy is none the less called for because the absence is from its nature permanent and the consequent inability unending.

The interpretation of the section is not free from difficulty, but I incline to take the broader view which results in sustaining the approval as valid under the statute.

There is, however, a yet broader view by which the same result is attained, viz., that Downs whether or not legally justified by statute was in fact performing the duties of the office of mayor of the borough in respect to matters in which the public was interested and to the knowledge and with concurrence of the council. He was, therefore, one whose acts, though upon this assumption not those of a lawful officer, the law, upon principles of public policy, will hold to be valid unless done without color of right or authority. In the present case, the statute we have attempted to interpret gives some show of authority for the acts of Downs and the requirement of the Borough act (*Pamph. L.* 1897, *p.* 286) that all vacancies shall be filled by appointment until the next election gives some color to his exercise of the duties of the office, since the council, whose duty it was to fill the office, may be presumed to have so filled it by concurrence in its being so filled.

The name by which Downs called his office, or by which it was known to the public, if at all significant, is not conclusive. He may not fall within the precise definition

hitherto given of a *de facto* officer, but the underlying principle is similar, and the public policy to be regarded and conserved is the same. This underlying principle, illustrated by all of our "*de facto*" cases, and notably expounded by Chief Justice Gummere in *Lang* v. *Bayonne,* 45 *Vroom* 455, requires, in my judgment, that the act of Downs in approving the public ordinance now before us be held to be valid upon grounds of public policy and immune from attacks that might be unanswerable if the *de jure* title to an office were the issue.

The ordinance is affirmed.