86 N.J. Super. 200 (1965)
206 A.2d 467
JACK HELLER, O'BRIEN BOLDT AND DAVID H. OXMAN, PLAINTIFFS,
v.
WILLIAM D. TICKNOR, JR. AND COMMON COUNCIL OF THE CITY OF ENGLEWOOD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 13, 1965.
*201 Mrs. Sylvia B. Pressler, attorney for plaintiffs.
Mr. William V. Breslin, attorney for defendants.
G.H. BROWN, J.S.C.
This controversy is on a legal level. There are no facts in dispute. Defendant Ticknor was elected councilman at large of the City of Englewood, Bergen County, for a two-year term in November 1963. He qualified as such and was chosen president of the common council. The elected mayor, Francis J. Donovan, resigned from that office effective December 16, 1964. Thereupon Ticknor qualified as acting mayor. He has since continued in that capacity, contending that he is entitled also to exercise all of his prerogatives as a member of the common council.
The question of law now before the court is whether by his assumption of the duties of acting mayor, defendant should forfeit the office to which he was elected, or whether, at least, he should meanwhile be barred from exercising its powers and fulfilling its duties. The citizen-taxpayer plaintiffs say he cannot serve in both capacities because there is an incompatible duality of function contravening statutory and common law.
*202 Ticknor was forced into his present status as acting mayor by the resignation of Mayor Donovan. The parties stipulate that the compulsion was generated by the terms of R.S. 40:171-20 as follows:
"In the event of the death, resignation, disqualification, or other disability, of the mayor of any city, the president of the * * * common council shall act as mayor until the next general election; shall be known as acting mayor; shall have all the powers and privileges; be entitled to the same salary, and be chargeable with the same duties and obligations as the mayor of such city; * * *."
It is noticed, at the outset, that this language does not expressly deprive defendant of his office or suspend his activity therein. It speaks only of his "powers and privileges" and his "duties and obligations" in the capacity of "acting mayor." Nevertheless, a prohibition against continuing to act as councilman is "clearly implicit" according to plaintiffs.
The first ground for this conclusion is derived from the architecture of government in Englewood, as it was designed by the provisions of the charter act (Acts Saved from Repeal, R.S. 40:109-1(1), et seq.). This organic law delineates a sharp separation of executive and legislative power. That deliberate division is implemented by interacting checks and balances. Without doubt, the exercise by one person of powers belonging to both departments would be out of joint with the statutory scheme. Plaintiffs cite hypothetical instances which serve to show how the legislative purpose could thus be thwarted.
Assuming that defendant's present position as an actor in both governmental spheres does not accord with the prescribed ideal, it will be actionable only if it is violative of the legislative will. I cannot find that his standing is untenable simply because he could, in a special set of circumstances, act distinctively in each wing of the structure. Such overlapping of function has expressly been approved in principle by the charter act itself. In R.S. 40:109-3(26) the following provision appears:
*203 "Whenever there shall be a vacancy in the office of mayor, or whenever the mayor shall be prevented by absence from the city, sickness or other cause from attending to the duties of his office, the president of the common council, * * * shall act as mayor and possess all the rights and powers of mayor during the vacancy in office caused by the absence or disability of the mayor."
A dual function is therein countenanced, at least during the mayor's "absence from the city" or "sickness." In a case where the incumbent mayor temporarily cannot attend to his duties for such reasons, the president of the common council is directed to act as mayor in his place. It could not persuasively be argued that the president would have to obey the mandate in every instance at the expense of his elected position. Indeed, the decision in Freint v. Borough of Dumont, 108 N.J.L. 245 (Sup. Ct. 1931), is to the contrary. It was held there that the council president, in his provisional capacity as "acting mayor" during the mayor's "absence,"
"* * * did not cease to be a councilman and was not deprived of the right to vote as such councilman upon all questions before the council." (at p. 248)
The Freint case did not involve an actual conflict between the dual functions. But the opinion does show that assumption of the acting mayor position does not by itself impair the councilmanic capacity.
R.S. 40:109-3(26) puts no temporal limit on the "absence" of the mayor. The common council president is ordered to act as substitute whether the absence is of long or short duration. Nor is the acquisition of mayoral power made to depend upon whether its exercise would fully comport with the executive-legislative dichotomy. The president "shall act as mayor and possess all the rights and powers of mayor during the vacancy * * * caused by the absence * * *." It must be assumed that the Legislature, in enacting this part of the charter, was mindful of its impact on the other parts, and in particular on the over-all design for normally divided functions.
*204 A conclusion is compelled that the simultaneous exercise by one man of executive and legislative functions was expressly contemplated by those who enacted the charter statute. Whether such a result is inimical to good government is therefore beside the point.
Plaintiffs see in the enactment and in the comparative language of R.S. 40:171-20 an intention to treat the mayor's substitute differently from what would be the case in a situation governed by R.S. 40:109-3(26). The former statute is said to require the activity of the council president in a new office  "acting mayor"  because of the existence of a "permanent vacancy." The latter statute allegedly relates only to a "temporary absence" where the president continues to act as president in both capacities. From this distinction it is argued that R.S. 40:171-20 impliedly forbids the president from acting as a councilman because "He is not merely filling in for another; he is acting in his own right [as acting mayor]."
If, in the Legislature's view, there is nothing inherently wrong with duality where required during the absence of an incumbent mayor (as is evidenced by the enactment of R.S. 40:109-3(26)), why should duality become a vice simply because the mayor has resigned? I do not think the subsequent passage of R.S. 40:171-20 was meant to reflect such an attitude. If separation of power on government's local level implements an inviolable principle, a compromise with its breach should be intolerable on any ground. If, on the other hand, the principle can be compromised through pragmatic adjustment, it should be expected to yield to circumstances of equal necessity.
Where the mayor of a city is not attending to the duties of his office it should make no real difference why an acting mayor is needed as a substitute. R.S. 40:109-3(26) is expressly applicable to indeterminate intervals of absence. This being so, duality should be deemed to be tolerated by R.S. 40:171-20 even though the future duration of the *205 vacancy is fixed. The time periods for substitution could be exactly the same.
The integrity of the office to which Ticknor was duly elected is directly at stake in this proceeding. Plaintiffs contend that the court's overriding concern should be for the best interest of the citizenry which, it is feared, could be threatened by his continuance as councilman-at-large. Judicial power to remove an elected official or to limit use of his office is extraordinary. It must be spelled out with the utmost clarity. A court at this level should not act so drastically in a case where the issue as to the requirement for judicial intervention can be the subject of such strenuous argument centering on ambiguous implications of legislative intent.
Since, for the foregoing reasons, the relevant statutes have been interpreted as accommodating contemporaneous activity in both positions by the same functionary, the common law doctrine against dual officeholding does not apply.
Ticknor has been projected into an awkward spot by two events beyond his control  the fortuity of Mr. Donovan's resignation and the consequent operation of R.S. 40:171-20. There is no reported decisional authority in this State which compels an adjudication that he must lose an elective office although the potentiality for such a holding has obtained for a long time. Complications and anomalies of the type envisioned by plaintiffs may well materialize. Defendant must deal with them as they occur, in conformity with the welfare of his community-wide constituency. The court cannot predict his conduct and predetermine that violence to the public interest must necessarily follow.
For these reasons there must be judgment for the defendants.