Remanded for proceedings not inconsistent herewith.

JACK HELLER, O'BRIEN BOLDT AND DAVID OXMAN, PLAINTIFFS-APPELLANTS, v. WILLIAM D. TICKNOR, JR. AND THE COMMON COUNCIL OF THE CITY OF ENGLEWOOD, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 8, 1965—Decided February 19, 1965.

502

Before Judges GOLDMANN, SULLIVAN and LABRECQUE.

*Mrs. Sylvia B. Pressler* argued the cause for appellants.

*Mr. William V. Breslin* argued the cause for respondents.

The opinion of the court was delivered by

SULLIVAN, J. A. D. This appeal involves the issue whether the acting mayor of the City of Englewood, who assumed the duties of that office upon the resignation of the mayor, may continue to hold the office of councilman at large and exercise the powers and duties of councilman at large.

The facts are not in dispute and are as follows. The City of Englewood was incorporated by *chapter* 40 of the *Laws of* 1899, which act took effect in March of 1899. On April 11, 1899 the newly incorporated City of Englewood, at a referendum election, by a majority of the qualified voters adopted *chapter* 52 of the *Laws of* 1899, (*R. S.* 40:109–1(1) *et seq.* (*Acts Saved from Repeal*)). The city has been governed ever since under the provisions of that act and its amendments and supplements.

The City of Englewood is divided into four wards. One councilman is elected from each ward, and one councilman is elected at large by the entire electorate of the city. The Com-

mon Council of the City of Englewood therefore is composed of five councilmen.

At the general election in November 1963 Francis J. Donovan was elected mayor for a term of two years. He duly qualified for that office and entered upon and performed the duties thereof. At the same election William D. Ticknor, Jr., was elected councilman at large for a term of two years. He duly qualified for that office and has since performed the duties as a member of the common council. At the organization meeting held on January 1, 1964, Ticknor was elected president of the common council.

In December 1964 Mayor Donovan tendered his resignation as mayor, which was accepted to take effect December 16, 1964.

A vacancy in the office of mayor is admittedly governed by *R. S.* 40:171–20,[1] applicable to cities generally, which provides:

> "In the event of the death, resignation, disqualification, or other disability, of the mayor of any city, the president of the board of aldermen or common council shall act as mayor until the next general election; shall be known as acting mayor; shall have all the powers and privileges; be entitled to the same salary, and be chargeable with the same duties and obligations as the mayor of such city; provided, however, this act shall not affect any proceedings already instituted nor any act heretofore signed by any officer as acting mayor."

Pursuant to the foregoing statute, defendant Ticknor, as president of the common council, assumed the powers and duties of mayor, and took and filed an oath of office as acting mayor.

The city solicitor of Englewood rendered a formal opinion that Ticknor, while acting as mayor, also can continue to

---

[1] The charter act, at *R. S.* 40:109–3(26) (*Acts Saved from Repeal*), provides that the president of the council shall act as mayor during the vacancy in office caused by the absence or disability of the mayor. However, this provision has been superseded by the subsequent enactment of *R. S.* 40:171–20, applicable to cities generally. See *L.* 1912, c. 112, § 2.

exercise the powers and duties of councilman at large. Since then, Ticknor has exercised the functions of both offices.

Plaintiffs, as residents, citizens and taxpayers, have filed the instant suit charging that the offices of mayor and councilman are incompatible and inconsistent, and that their simultaneous exercise by the same person is violative of the principle of separation of the executive and legislative functions. Specifically, plaintiffs contend that Ticknor, upon assuming the duties of acting mayor, created a vacancy in the office of councilman at large which must now be filled by the council in accordance with *R. S.* 40:109–3(9) (*Acts Saved from Repeal*). In the alternative, plaintiffs contend that even if it be determined that Ticknor retains his office of councilman while acting as mayor, he should not be permitted to exercise his councilmanic powers and duties.

Plaintiffs have not charged that any specific situation has occurred where Ticknor's performance of his duties as acting mayor has actually conflicted with his continuing to serve as councilman. Rather, their position is that the potentiality for conflict is real; therefore Ticknor should be barred from occupying or, at least, functioning in both capacities.

The trial court (86 *N. J. Super.* 200 (*Law Div.* 1965)) ruled that the legislative intent, as expressed in *R. S.* 40:171–20, was that Ticknor, while acting as mayor, did not vacate his office as councilman at large and could continue to exercise the powers and duties of his councilmanic office. Judgment was entered in favor of defendants.

We conclude that Ticknor's assumption of the. duties of acting mayor did not result in his vacation of the office of councilman at large. The statute does not provide that the president of the council shall succeed to the office of mayor and become the mayor. It does not confer upon him the title of the office. It empowers him only to serve as acting mayor. The legislative plan is that temporarily, until the next general election, the powers and duties of the office merely devolve upon the president of the council. Indeed, under *R. S.* 40:171–20 it seems clear that Ticknor can continue to act as

mayor only so long as he remains president of the council; *i. e.,* his status as council president, which in turn depends on his continuing in office as councilman, is a statutory requisite to his acting as mayor.

In *Clifford v. Heller,* 63 *N. J. L.* 105, 57 *L. R. A.* 312 (*Sup. Ct.* 1899), which dealt, *inter alia,* with the right of the president of the State Senate, upon the resignation of the Governor from office, to exercise the powers and duties of that office under the constitutional provision, it was held that he could continue to exercise such powers only as long as he remained a senator and president of the Senate, and that upon his resignation as senator he could no longer exercise the functions of the Executive Department.

The situation presented by Mayor Donovan's resignation is a temporary one. The vacancy in that office is required to be filled at the next general election. In the interim the statute assures continuity of government by providing that until a new mayor is elected, the president of the council "shall act as mayor." It seems clear that in requiring the president of the council to exercise temporarily the powers and duties of the vacant office, the Legislature did not intend that he must forfeit and vacate the office to which he was regularly elected.

The same reasoning applies to plaintiffs' alternate contention that Ticknor, while acting as mayor, should not be permitted to exercise his councilmanic powers and duties.

We interpret *R. S.* 40:171-20 to confer upon the president of the council the additional powers of acting as mayor until the vacancy can be filled at the next general election. Such a situation is admittedly not ideal since the two offices are separate. However, we are dealing with a municipal government which is a creature of the State Legislature. 4 *McQuillin, Municipal Corporations,* § 13.03 (1949), notes that it has not been the policy to separate completely legislative from executive or administrative functions in the government of municipalities. There are instances of overlapping of functions. As is stated in *Reilly v. Ozzard,* 33 *N. J.* 529, 89 *A. L. R. 2d* 612 (1960):

"Except as to offices created by the *Constitution*, public offices and employments are ultimately the creatures of legislation. The Legislature alone may determine the duties and the interrelation of the public posts it establishes or authorizes to be established. Within the constitutional framework, the Legislature is the architect of the structure of government. The Judiciary has no creative power in that area." (at *p.* 553)

There are instances where the simultaneous exercise of the powers and duties of separate offices has been held to be within the constitutional or legislative framework. In *Clifford, supra,* the Supreme Court, in addition to holding that upon the resignation of the Governor from office the president of the Senate could exercise the powers of that office only so long as he continued to be a senator and president of the Senate, also held that when the powers, duties and emoluments of the office of Governor devolve upon the president of the Senate, he exercises the powers and duties of both offices.

"He is still president of the senate, with the added duties required of the chief executive of the state imposed upon him.

There is no language in the constitution from which it can reasonably be inferred that his office of president of the senate was to be vacated. He retains his office of senator; and as president of the senate, and not as governor. *He exercises the added powers and performs the superimposed duties.*" (63 *N. J. L.*, at *p.* 111; emphasis added)

*Cf. Freint v. Dumont,* 108 *N. J. L.* 245 (*Sup. Ct.* 1931), a case of temporary vacancy in office of mayor. There the court had before it the issue of the validity of a repealer ordinance adopted by a borough council. At the time the mayor was out of the State on account of illness, and the president of the council was performing the duties of mayor. Because of its nature, the ordinance required an affirmative vote of three-fourths of the members of the council. The ordinance was adopted by a 5–1 vote, with the president of the council casting one of the affirmative votes. It was contended that the president of the council had no right to vote as councilman because he was the acting mayor. As to this the court said:

"It is contended that the president of council upon becoming acting mayor, was not permitted to vote except to break a tie, and that, therefore, there were but four legal votes cast in favor of the adoption of the ordinance. The statute provides (*Comp. Stat.*, *p.* 237, § 24) that the president of council 'shall have the right of debate and vote on all questions before the council.' By assuming the duties of mayor, in the absence of the mayor, the president of council did not cease to be a councilman and was not deprived of the right to vote as such councilman upon all questions before the council." (at *p.* 248)

Based on our determination that Ticknor's retention of his councilmanic office is a statutory condition of his acting as mayor, the situation presents two alternatives. If Ticknor is permitted to exercise his councilmanic powers and duties at the same time that he is acting as mayor, the result is somewhat less than ideal and possesses a possibility of a conflict in the powers and duties which he may exercise. On the other hand, Ticknor is one of five councilmen elected to the governing body of Englewood. If he is barred from functioning as councilman while he acts as mayor, not only would the legislative intent of a five-man body be frustrated, but also the will of the electorate would be nullified. Under the circumstances, the first alternative is clearly preferable.

This is not to say that a particular situation may not arise where Ticknor, in attempting to fulfill both offices, may not be confronted with a conflict of duties and responsibilities so fundamental that the public interest requires that, as to the particular matter, he act in only one or the other capacity. At the present time we think it sufficient to hold that the sense of *R. S.* 40:171–20 is that the president of the common council, in acting as mayor, does not assume the office of mayor but merely exercises the functions of such office in addition to his regular councilmanic powers and duties.

Affirmed.