97 N.J. Super. 104 (1967)
234 A.2d 496
PHILLIP B. ROBINSON, MAYOR OF VENTNOR CITY, NEW JERSEY, PLAINTIFF,
v.
RODNEY KREISCHER, AS PRESIDENT OF THE CITY COUNCIL OF THE CITY OF VENTNOR CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND RAYMOND STARK, MUNICIPAL MAGISTRATE OF VENTNOR CITY, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 27, 1967.
*106 Mr. Alexander Blatt for plaintiff (Messrs. Blatt, Blatt & Consalvo, attorneys).
Mr. Frank J. Ferry for defendant, Rodney Kreischer.
Mr. Chaim H. Sandler for defendant, Raymond Stark.
HORN, J.S.C.
This matter is before the court on plaintiff's motion for summary judgment.
Plaintiff is the mayor of Ventnor City and filed this action to secure a determination whether the appointment of defendant Raymond Stark as municipal court magistrate of that municipality by the acting mayor is valid and binding on him as the subsequently duly elected mayor. The other defendant is Rodney Kreischer, president of the city council of Ventnor City. Both defendants assert, by their answers, that the appointment of Stark was valid and is binding on plaintiff for the full three-year statutory term.
The then current term of Warren Titus, mayor of Ventnor City, expired on December 31, 1966. A general election *107 was held on November 8, 1966 for the office of mayor. Titus and plaintiff were candidates. Shortly after the election was held, litigation was instituted to determine whether certain absentee ballots should be counted. It is not important in my view whether this constituted a contest of the election.
No certification as to the election having been made by January 1, 1967, the commencement of the mayor's term, Kreischer was elected by city council as president on January 2, 1967 and became acting mayor pursuant to the City Referendum Charter Act of 1897, Acts Saved from Repeal, R.S. 40:108-1 et seq. (charter). As such, on the same date he made a number of appointments of city employees. He reappointed Stark, a layman, (N.J.S. 2A:8-7), who had been judge of the municipal court of Ventnor City for many years and whose last term had expired December 31, 1966. City council, consisting of seven members, confirmed the appointment immediately thereafter.
On January 19, 1967 Titus, having been certified as the duly elected mayor, took the oath of office and commenced to serve as such. He served until February 21, 1967, at which time he submitted his resignation. Judgment was entered on or about March 8, 1967 declaring his election invalid. A special election was thereafter held in April 1967, following which Robinson was certified as the duly elected mayor. He immediately took office and shortly thereafter instituted this action.
Although some doubt may be expressed as to whether a justiciable controversy is presented in this proceeding since plaintiff has not attempted to appoint a successor to the office involved, and it well may be that any appointment he might make may not be confirmed by the council as required by the charter provisions, nevertheless I feel that a determination should be made. N.J.S. 2A:16-53 states that a person whose rights, status or other legal relations are affected by a statute may have determined any question of construction or validity arising from the statute, and *108 obtain a declaration of rights, status or other legal relations thereunder. Neither defendant has objected to such a determination.
R.S. 40:108-1(26) of the charter act provides as follows:
"Whenever there shall be a vacancy in the office of mayor, or whenever the mayor shall be prevented by absence from the city, sickness or other cause from attending to the duties of his office, the president of the common council, or if he is absent or disabled, the president to be elected pro tempore shall act as mayor and possess all the rights and powers of mayor during the vacancy in office caused by the absence or disability of the mayor."
Plaintiff advances the argument that this statute governs the situation and that by virtue thereof the powers of appointment of the acting mayor cannot extend beyond the time of the vacancy in the office of mayor.
He also suggests that R.S. 40:171-20, adopted in 1912, is not applicable. This reads:
"In the event of the death, resignation, disqualification, or other disability, of the mayor of any city, the president of the board of alderman or common council shall act as mayor until the next general election; shall be known as acting mayor; shall have all the powers and privileges; be entitled to the same salary, and be chargeable with the same duties and obligations as the mayor of such city; provided, however, this act shall not affect any proceedings already instituted nor any act heretofore signed by any officer as acting mayor."
I need not make any determination as to whether this latter statute, R.S. 40:171-20, superseded the charter provisions because I do not believe it makes any difference in this case. See, however, Heller v. Ticknor, 86 N.J. Super. 501 (App. Div. 1965) footnote at p. 503, which holds that a charter provision verbatim with the above quoted one was superseded by R.S. 40:171-20.
Plaintiff avers that by enacting the above charter provision the Legislature intended that the powers of the acting mayor were restricted to making appointments for *109 terms which would end when the duly elected mayor qualified as such. The plain language does not support that view. Nor do I subscribe to the thesis advanced by plaintiff that the acting mayor is a de facto officer whose appointment could not create a de jure officer. It is, of course, well settled in this State that a de facto body cannot create a de jure officer, von Nieda v. Bennett, 117 N.J.L. 231 (E. & A. 1936), but the premise that an acting mayor is a de facto mayor appears to be without support. Harrison v. Borough of Madison, 81 N.J.L. 21 (Sup. Ct. 1911), affirmed 82 N.J.L. 527 (E. & A. 1911).
The charter provision, by its plain terms, clothed the acting mayor with all the "rights and powers" of mayor during the vacancy in office. R.S. 40:171-20 conferred upon him "all the powers and privileges" of mayor. In neither of these statutes is there the slightest indication that the "rights and powers" or "powers and privileges" were delimited with respect to appointments to such time as the vacancy in the office of mayor ceased. The reasonable interpretation from this plain language is that when the vacancy ceased, the acting mayor's powers as such likewise terminated; not that the powers of the appointees or the term of office of the appointees ended. Swede v. City of Clifton, 39 N.J. Super. 366 (App. Div. 1956), affirmed 22 N.J. 303 (1956).
Plaintiff also relies on N.J.S.A. 40:46-16.5. That section is a part of an act adopted in 1964 as a supplement to the Home Rule Act of 1917. The sections of this supplement provide for a situation where vacancies exist in a majority of the membership of the governing body of any municipality, or in the entire membership of the governing body, or in the entire membership thereof as well as the office of mayor, resulting from a judicial determination declaring invalid the election of persons who would otherwise have filled such offices. N.J.S.A. 40:46-16.1 to 16.4 make provision for interim appointments by the Superior Court assignment judge for the county and special elections to *110 fill the offices, and then follows N.J.S.A. 40:46-16.5 which states:
"In the event that any such vacancies occur by reason of a judicial determination invalidating the election of all the members of the governing body, or a majority of such members, including the mayor of the municipality, all appointments to office, position, or employment in the municipality required to be made by the mayor or by a majority vote of the governing body, and which have been so made, shall terminate and shall be vacated and all appointments to office, position, or employment thereafter made by the interim or part interim governing body shall be vacated at the time the newly elected members to the governing body take office."
Consequently this statute was never intended to cover the factual situation that is present in this case. Nor may it be accepted as some indication of a general public policy that appointments made by an acting mayor or body shall be only for the interim, because it is so restrictive in scope. This exiguity exhibits the lack of such policy.
This statute as well as R.S. 40:46-15, a part of Article IV of the Home Rule Act, point up the fact it was no mere accident that the Legislature omitted a similar provision in the charter act or R.S. 40:171-20. R.S. 40:46-15 states:
"All vacancies in office in any municipality arising from or created by any other cause than expiration of term of office shall be filled for the unexpired term only."
Plaintiff further contends that this court should declare that the tenure of Stark's position was concluded with the taking of office of plaintiff, on the thesis that the acting mayor and common council deliberately made the appointment in order to frustrate plaintiff's right as the incoming mayor to make his own appointments, and that this action was contrary to public policy. For this argument plaintiff cites Grogan v. DeSapio, 11 N.J. 308 (1953); State v. Hand, 71 N.J.L. 137 (Sup. Ct. 1904); Haber v. Goldberg, *111 92 N.J.L. 367 (E. & A. 1918), and Higgins v. Denver, 85 N.J. Super. 277 (App. Div. 1964).
None of these cases is applicable. There is no averment here that defendant Kreischer and the city council did anything more than make and confirm the appointment. There is no claim that they procured a premature resignation, as in Higgins, or gave only lip service to, rather than abide by, the spirit of a statute, as in Grogan, or otherwise failed to follow the plain terms of the law.
The office of municipal magistrate is somewhat unique in certain aspects. Our Supreme Court has not yet decided whether it is a state or municipal position. In re Mattera, 34 N.J. 259 (1961).
Our 1947 Constitution declares that "the judicial power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction." Art. VI, § I, par. 1.
In order to implement this constitutional provision the Legislature, in 1948, adopted N.J.S. 2A:8-1 et seq., which granted to the municipal court and a magistrate jurisdiction of matters which are in no sense municipal. Included are violations of various state laws, N.J.S. 2A:8-21, and certain criminal offenses upon waiver of indictment and trial by jury. N.J.S. 2A:8-22. The magistrate is authorized to commit a person charged with any indictable offense, N.J.S. 2A:8-23.
Judges of the county court are ex-officio judges of the municipal court, and a Superior Court judge may be assigned by the chief justice to hold temporarily a municipal court. N.J.S. 2A:8-11.
The municipal court, as an inferior court of limited jurisdiction, shares in the judicial power referred to in the Constitution. Kagan v. Caroselli, 30 N.J. 371 (1959). The powers and duties of the office of magistrate are not appropriate to any of the departments of local government. As a matter of fact, the Constitution places the administrative control of the municipal court in the Supreme Court *112 and the chief justice. Art. VI, § II, par. 3; Art. VI, § VII, par. 1. As stated in Kagan:
"There is no room for divided authority. The constitutional plan assures to the magistrate independence of local government and the 1948 statute was designed to preserve it. See In re Klaisz, 19 N.J. 145, 148 (1955)." (at p. 379)
The legislative decision in the 1948 statute to repose the power in the governing body was a concession to those who thought a voice in the matter should be given to the municipality. But the power to appoint did not make the functions of a magistrate a phase of local government. "Rather, in exercising the appointive power, the governing body acts merely as a statutory agent. See Monte v. Milat, 17 N.J. Super. 260, 265 (Law Div. 1952)." Ibid.
In Krieger v. Jersey City, 27 N.J. 535 (1958), it was stated that the 1948 act deals comprehensively with municipal courts and was designed to replace a haphazard set of local courts with a more effective system as part of a state-wide judiciary. Although it was left to local decision the question of whether a municipal court should be established, N.J.S. 2A:8-1, the statute itself creates the office, fixes the term thereof and vests the appointing power in local government only with respect to a court established by a single municipality. (at p. 541).
In re Klaisz, 19 N.J. 145, 148 (1955), it was stated that the municipal court has earned "the respect of the people in this State and as a result has been entrusted with greatly enlarged jurisdiction not accorded to the justices of the peace, the police courts and other predecessor courts. * * * This has been due in larger part to the fact that the municipal magistrates have under the rules of court * * * preserved their independence of all other branches of the municipal government."
In Board of Health of Weehawken Twp. v. N.Y. Central Railroad Co., 10 N.J. 284 (1952), it was stated:
*113 "Our municipal courts are most important because they are closest to the people and under the guidance of the governing statute and the Supreme Court's rules they are coming to exercise a significant part of the judicial power with dignified effectiveness." (at p. 290)
N.J.S. 2A:8-5, as amended in 1964, provides that each municipal magistrate "shall serve for a term of 3 years from the date of his appointment and until his successor is appointed and qualified. Any appointment to fill a vacancy caused other than by expiration of term shall be made for the unexpired term only."
There is no authority given in this statute to appoint a magistrate to serve a term less than three years except where the appointment is made to fill a vacancy caused other than by expiration of term. This was not the situation here.
In Jacoby v. Brown, 55 N.J. Super. 469 (Law Div. 1959), it was observed that N.J.S. 2A:8-2 specifically provides that municipal courts shall hereafter be subject to and operate under the provisions of that chapter only. Also, that "Title 40 of the Revised Statutes has no application to the appointment for the term of office of a municipal court magistrate." (at p. 473).
Plaintiff's contention that it is against public policy for the appointment to have been made at this time is transparent when held up to the light of reasoning. There is no uniform commencement of term for magistrates. Assume that the term of this magistrate had ended December 28, 1966. There could hardly have been a meritorious contention that a reappointment by the then mayor, and a confirmation by the then council, would have been an infringement upon the rights of the plaintiff who might have been the new mayor to be installed on January 1. The fact that the expiration of Stark's term on December 31, 1966 coincided with that of the mayor's is the only factor present in this case that might not be present in the others.
However, the only relevant question is whether one has the legal right and power to make the appointment, and *114 it is not relevant whether the appointment was made during his last hours in office, or as an acting mayor. Accord, Bakely v. Nowrey, 68 N.J.L. 95 (Sup. Ct. 1902), affirmed 68 N.J.L. 732 (E. & A. 1903), where the mayor made a valid appointment at 10:30 A.M. on the day that his term expired at noon. Cf. Whitney v. Van Buskirk, 40 N.J.L. 463 (Sup. Ct. 1878). See also State ex rel. Smith, Mayor, v. Mills, 2 Wash. 566, 27 P. 560 (Sup. Ct. 1881), where the charter required the mayor to preside at council meetings and, in his absence, council had the power to elect a mayor pro tem. The mayor sent a nomination for an appointment to the council for their confirmation. The mayor was not present at the council meeting, and the council elected a mayor pro tem. The mayor's nomination for the appointment was rejected by the council, and the nomination by the mayor pro tem was confirmed by the council and upheld by the court.
The court said that "the only question is, was Hidden properly acting as mayor pro tem at the time the appointment was made? If he was, the power to appoint was conferred upon him by the statute, and it is not questioned that he was at such time a lawfully acting mayor pro tem." Ibid.
Additionally, on January 2, 1967 it was entirely unknown how long a time would elapse before the new mayor would qualify. Notwithstanding the fact that the statute N.J.S. 2A:8-5 provides that the incumbent may remain until his successor is appointed, this does not run counter to the authorization of the acting mayor to appoint a magistrate if it were then felt to be for the best interests of the municipality. It was a matter of discretion, and the court will not assume that the exercise of same was motivated for reasons that are against public policy, in the absence of evidence to support such conclusion. The presumption is to the contrary.
"Courts are reluctant to interfere with municipal action by questioning the motives of those entrusted with governmental power proceeding within the allowed sphere of action. Mere mistakes of policy *115 or of judgment, within the conferred authority, are not ordinarily subject to judicial restraint. Reimer v. Mayor and Council of Borough of Allendale, 123 N.J.L. 563, 567, 568 (Sup. Ct. 1939)." Grogan v. De Sapio, 19 N.J. Super. 469, 475 (Law Div. 1952), aff'd 11 N.J. 308 (1953).
In view of the fact that a magistrate is not a part of the mayor's executive family for whom he is responsible, and that only our Supreme Court has the power of overseeing his magisterial activities, his ethics and discipline, there is no valid reason for the duly elected mayor to complain under the circumstances that he has been deprived illegally of choosing his own little cabinet.
Accordingly, I hold that the appointment of defendant Stark for a term of three years was and is valid and binding upon plaintiff.
The parties have indicated that they desired a final judgment to be entered upon my conclusions. Therefore, defendants shall submit form of judgment pursuant to the rules and pursuant to said agreement.