891 A.2d 1241 (2006)
383 N.J. Super. 384
Karen DeSOTO, Corporation Counsel for the City of Jersey City, Plaintiff/Appellant,
v.
Harvey SMITH and the City of Jersey City, Defendants/Respondents.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically February 1, 2006.
Decided March 1, 2006.
*1242 Karen F. DeSoto argued the cause pro se.
Stephen J. Edelstein, Florham Park, argued the cause for respondent (Schwartz Simon Edelstein Celso & Kessler, attorneys; Mr. Edelstein, of counsel; Mr. Edelstein, Denis G. Murphy and Jason J. Lavery, on the brief).
Before Judges KESTIN, LEFELT, and SELTZER.
The opinion of the court was delivered by
LEFELT, J.A.D.
The Mayor of Jersey City, Glenn Cunningham, appointed plaintiff Karen DeSoto as Corporation Counsel and Director of the Department of Law. Less than one year thereafter, the mayor unexpectedly died, and Harvey Smith, who was council president, became acting mayor. Smith then removed DeSoto from her position, and DeSoto filed a complaint in lieu of prerogative writs against the City and Smith to challenge her removal. Defendants' motion to dismiss the complaint was granted by Judge Gallipoli, and DeSoto now appeals claiming Smith did not have authority to remove her, she had a one-year fixed term, and was denied due process. We affirm.
Jersey City is governed by a mayor-council form of government adopted pursuant to the Faulkner Act, N.J.S.A. 40:69A-31. Under this form of government, the legislative power is exercised by the municipal council, N.J.S.A. 40:69A-36, and the executive power is exercised by the mayor. N.J.S.A. 40:69A-39.
*1243 Less than one month after Smith became acting mayor, he notified plaintiff and the council by letter of his intention to remove plaintiff from her position. The letter advised plaintiff that she would "be afforded an opportunity to be heard concerning [her] removal as Corporation Counsel to be conducted [the next day] before [Smith] as Acting Mayor." The next day, plaintiff met with Smith to discuss his intentions. Despite plaintiff's protestations, Smith persisted in his intent to remove her.
About two weeks later, plaintiff prepared a resolution disapproving her removal, which she submitted to the City Clerk, "[p]ursuant to N.J.S.A. 40:69A-43." A few days later, plaintiff advised the City Clerk and council that she was appealing "pursuant to § 3-15 of the Jersey City Code." The council never voted on plaintiff's proposed resolution and the record does not reflect any disposition of her § 3-15 appeal. Plaintiff, in fact, never appeared before the council.
On the same day plaintiff advised the City Clerk and council of her appeal, plaintiff filed a verified complaint for declaratory judgment and action in lieu of prerogative writs. In response, defendants moved for dismissal. After Judge Gallipoli granted defendants' motion dismissing her complaint, plaintiff appealed to this court.
Plaintiff first claims that N.J.S.A. 40A:9-131, which allows the council president to serve as acting mayor, while remaining as council president, violates the separation of powers doctrine. Plaintiff argues the trial court erred when it declined to review this constitutional issue solely because "notice had not been given to the Attorney General," especially because plaintiff claims she properly notified the Attorney General as required by R. 4:28-4.
Rule 4:28-4(a) requires that notice be given the Attorney General of the pendency of any action challenging the validity of a statute when neither the State nor a State agency or officer is participating in the action. Because plaintiff argued that N.J.S.A. 40A:9-131 was unconstitutional, the rule required that she notify the Attorney General.
When notification of the Attorney General is not provided, a trial court "may," but need not refuse to consider the statutory challenge. See D.I.A.L. v. Clifton Constr. Bd. of Appeals, 218 N.J.Super. 74, 85, 526 A.2d 1125 (App.Div.1987), certif. denied, 113 N.J. 335, 550 A.2d 451 (1988). Nevertheless, the Attorney General does not respond to all notices provided under the rule, and even if the trial court had decided the issue, we need not have accorded the decision any special deference. Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). Accordingly, we move on to decide the issue.
Upon review, "[s]tatutes are presumed to be constitutional." State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). A "[c]ourt will invalidate a statute only if it is clearly repugnant to the Constitution." GMC v. City of Linden, 150 N.J. 522, 532, 696 A.2d 683 (1997).
In this instance, plaintiff's challenge fails because "the formal doctrine of separation of powers has been held inapplicable to municipalities." In re Shain, 92 N.J. 524, 537, 457 A.2d 828 (1983). Although some separation of functions is intended under the mayor-council plan of government, the doctrine of separation of powers "`is not generally applicable to [the] mayor-council plan of government.'" Mun. Council of the City of Newark v. James, 183 N.J. 361, 371, 873 A.2d 544 (2005) (quoting Casamasino v. City of Jersey City, 158 N.J. 333, 343, 730 A.2d 287 *1244 (1999)) (alteration in original); see also In re Shain, supra, 92 N.J. at 537, 457 A.2d 828. The doctrine should be applied to a mayor in the mayor-council form of government only when the challenged action exceeds that normally assigned to the mayor and encroaches upon the council's responsibilities. See In re Shain, supra, 92 N.J. at 538, 457 A.2d 828.
Here, Smith's removal of plaintiff did not encroach upon the council's functions, as they had authority to counter his action. N.J.S.A. 40:69A-43(c). N.J.S.A. 40A:9-131 specifically provides for the council president to serve as acting mayor without requiring the president to relinquish his or her elected position. Plaintiff has provided an insufficient basis to challenge Smith's temporary control of both offices. See Heller v. Ticknor, 86 N.J.Super. 200, 205, 206 A.2d 467 (Law Div.), aff'd, 86 N.J.Super. 501, 504-05, 207 A.2d 336 (App. Div.), certif. denied, 44 N.J. 400, 209 A.2d 928 (1965).
Next plaintiff argues that N.J.S.A. 40A:9-131, has been "impliedly repealed" by the more recently enacted Municipal Vacancy Law. N.J.S.A. 40A:16-1 to -23. Consequently, according to plaintiff, N.J.S.A. 40A:16-12 controls the transition of power where a mayoral vacancy has occurred and, in the absence of temporary appointment by the council, no acting mayor assumes office upon a vacancy. Thus, plaintiff argues the position remained vacant and Smith served at best as "caretaker," without any mayoral power, until election of the new mayor. We do not agree.
N.J.S.A. 40A:9-131 provides that "[i]n every municipality, unless otherwise provided by law, if a vacancy occurs in the office of mayor, by reason of death, resignation or otherwise, the presiding officer of the governing body shall become the acting mayor until a successor is elected and qualified." N.J.S.A. 40A:16-12 provides: "[i]f the incumbent whose office has become vacant was not elected to office as the nominee of a political party, the governing body may, within 30 days of the occurrence of the vacancy, appoint a successor to fill the vacancy without regard to party."
These statutes are not in conflict, and can be read to complement each other. See State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991). As Judge Gallipoli explained, N.J.S.A. 40A:16-12 provides a "mechanism for the appointment of the successor as mayor ... however the mechanism is optional not mandatory[.]" When a council chooses not to appoint a successor to the vacant mayoral position, then by operation of law, the council president becomes "acting mayor." N.J.S.A. 40A:9-131. Notably, although our legislature has enacted a statute permitting a city council position to remain vacant, N.J.S.A. 40A:16-13, there is no similar act providing for a mayoral vacancy. That is so because N.J.S.A. 40A:9-131 acts immediately upon any unexpected vacancy in a mayoral office. In order to preclude this statute from having any continuing effect, the council could have filled the vacancy, in accordance with N.J.S.A. 40A:16-12, and in effect removed the council president as acting mayor. See N.J.S.A. 40A:16-21.
Even though N.J.S.A. 40A:9-131 rendered Smith, by operation of law, the City's "acting mayor," plaintiff further contends that because council did not pass a resolution "affording Mr. Smith the duties, rights and responsibilities of Acting Mayor[,] ... his powers did not vest beyond the duties of a temporary caretaker." Plaintiff relies on State ex rel. Clarke v. The Bd. of Health of the City of Trenton, 49 N.J.L. 349, 354, 8 A. 509 (Sup. Ct.1887), in which the Court found "authority of an acting mayor depends on an antecedent condition ... [and] his right to *1245 nominate must first be proved." However, Clarke is not relevant. In Clarke, the court found the council president did not have appointment powers because "when Clarke's nomination was made, the mayor was not absent from Trenton, nor in any way disqualified from performing the duties of his office." Ibid. Here, the elected mayor had died and the council president was appropriately serving as acting mayor pursuant to N.J.S.A. 40A:9-131, as well as the Jersey City Code.
The City Code, section 3-16(b), provides that when the council president becomes acting mayor, the president shall be paid the mayor's salary because the president is assuming "the powers and duties of the mayor." There is no support for an acting mayor becoming merely a de facto mayor. See Robinson v. Kreischer, 97 N.J.Super. 104, 109, 234 A.2d 496 (Ch.Div.1967), aff'd o.b., 101 N.J.Super. 482, 244 A.2d 699 (App.Div.1968); Harrison v. Borough of Madison, 81 N.J.L. 21, 78 A. 665 (Sup.Ct.), aff'd, 82 N.J.L. 527, 81 A. 755 (E. & A.1911).
Plaintiff next contends N.J.S.A. 40A:9-139 provided her with a fixed term of one year and that she could only be removed upon the expiration of that term or for cause. The pertinent statute specifies that the term of office for "a municipal attorney who may be designated as the corporation counsel or municipal attorney [] unless otherwise provided by law... shall be 1 year." Ibid.
In this instance, however, N.J.S.A. 40:69A-43(c) otherwise provides and authorizes the mayor to "remove any department head, ... after notice and an opportunity to be heard" with "such removal [becoming] effective on the 20th day after the filing of such notice unless the Council shall prior thereto have adopted a resolution by a two-thirds vote of the whole number of the Council, disapproving the removal." Section 3-15 of the Jersey City Code mirrors this statutory provision by authorizing the mayor in his or her discretion to "remove any department head after notice and an opportunity to be heard." Before removing the department head, the mayor must "file written notice of his or her intention with the Council." Ibid. The "removal shall become effective on the 20th day after the filing of such notice, unless the Council shall prior thereto have adopted a resolution by a 2/3 vote of the whole number of the Council disapproving the removal." Ibid.
To the extent that N.J.S.A. 40A:9-139 establishes a one-year term for municipal attorneys, it can be read as conflicting with N.J.S.A. 40:69A-43(c), authorizing removal, in the mayor's discretion, of municipal attorneys who are department heads. However, to the extent the provisions can be seen as in conflict, N.J.S.A. 40:69A-43 controls, despite the fact that N.J.S.A. 40A:9-139 and-140 were enacted long after the adoption of N.J.S.A. 40:69A-43. See Indyk v. Klink, 121 N.J.Super. 314, 321, 297 A.2d 5 (App.Div.1972).
The Faulkner Act "was intended to confer upon municipalities the greatest possible powers of self-government and home rule[.]" Keuerleber v. Twp. of Pemberton, 260 N.J.Super. 541, 544, 617 A.2d 277 (App.Div.1992), certif. denied, 133 N.J. 434, 627 A.2d 1140 (1993) (finding no conflict where the new mayor dismissed the municipal tax collector pursuant to the Faulkner Act, N.J.S.A. 40:69A-207, when the municipality changed form of government, but prior to the end of the tax collector's four-year term under the general law, N.J.S.A. 40A:9-142); see also Second Report of the Commission on Municipal Government, Article 2, New Powers, p. 15 (1950).
*1246 The Faulkner Act specifically authorizes municipalities, "subject to the provisions of this act or other general laws[,]" to "organize and regulate its internal affairs, and to establish, alter, and abolish ... employments... and fix their terms[.]" N.J.S.A. 40:69A-29. Because a "general law must be consistent with the Faulkner Act for the general law to control," "the general law does not rein supreme over ... the Faulkner Act." Keuerleber, supra, 260 N.J.Super. at 546, 617 A.2d 277 (emphasis in original); see also N.J.S.A. 40:69A-28.
In any event, the two provisions can be harmonized. N.J.S.A. 40:69A-43(c) pertains only to municipalities organized by departments. If the municipal attorney is not a department head as, for example, in smaller municipalities having only a municipal attorney, then the term of office for the town attorney would be one year as provided by N.J.S.A. 40A:9-139.
It is significant, in our view, that plaintiff's appointment letter and resolution specifically referenced the statute now being utilized for her removal. When Mayor Cunningham appointed plaintiff, he notified the Council by letter, which requested the body's "advice and consent," in accordance with "N.J.S.A. 40:69A-43." The resolution appointing plaintiff also noted that "N.J.S.A. 40:69A-43 provides that each municipal department shall be headed by a Director" and specifically appointed her as "Director of the Department of Law for the City of Jersey City."
By our construction of N.J.S.A. 40A:9-139, allowing the discretionary removal of the Director of a Department of Law by an acting mayor, we intend to foster the policy that "officials at least, should have freedom to select the professionals with whom they will work in harmony[.]" Hiering v. Twp. of Jackson, 248 N.J.Super. 37, 44-45, 589 A.2d 1373 (Law Div.1990), aff'd, 248 N.J.Super. 9, 589 A.2d 1357 (App.Div. 1991). "Furthermore, requiring the majority of the governing body to receive the advice of counsel in whom it does not exhibit trust and confidence hardly engenders public respect, not to mention organizational stability and efficiency." Id. at 45, 589 A.2d 1373.
Accordingly, a "department head is responsible to the mayor, who may remove [her] at will subject only to veto by a two-thirds vote of the whole number of the council." Hutt v. Robbins, 98 N.J.Super. 99, 105, 107, 236 A.2d 172 (App.Div.1967), certif. denied, 51 N.J. 185, 238 A.2d 471 (1968) (finding that the municipal council may "fix a term of office for the municipal solicitor although he remains subject to removal at will by the director of the department of law pursuant to N.J.S.A. 40:69A-43(d)").
Finally, plaintiff contends she was denied due process of law because the procedural requirements of the Jersey City Code § 3-15 were not met. Specifically, she argues she was provided inadequate notice and inadequate preparation time for her meeting with Smith, and that the "Council [had] not listed her appeal on their agenda, nor heard her arguments against her termination," and thus, she was not afforded a meaningful opportunity to be heard as required by § 3-15.
In this instance, the terms of plaintiff's employment indicate that her position was terminable at the mayor's discretion. See Bd. of Regents v. Roth, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972). Furthermore, plaintiff's termination did not in any way question her "good name, reputation, honor, or integrity," and termination created no detriment to future employment. See Roth, supra, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558-59; see also Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 *1247 N.J. 145, 161-62, 390 A.2d 90 (1978). Therefore, she had no property or liberty interest in her position. See Roth, supra, 408 U.S. at 573, 578, 92 S.Ct. at 2707, 2709, 33 L.Ed.2d at 558-59, 561; Nicoletta, supra, 77 N.J. at 161-62, 390 A.2d 90.
Though plaintiff claims to the contrary, the record reflects that the mayor and council fully complied with the applicable statute and the Jersey City Code. Smith provided written notice of his intent to dismiss plaintiff and filed the notice with the council. Smith invited plaintiff to meet with him to discuss his intentions and plaintiff accepted the invitation. This was her notice and opportunity to be heard. The council did not act on plaintiff's proposed resolution disapproving her removal and therefore did not veto the mayor's discretionary decision. Under the circumstances, this was all the process that plaintiff was due. She had no right to present witnesses and be heard at a full blown evidentiary hearing.
Therefore, none of plaintiff's arguments have sufficient merit to require reversal of Judge Gallipoli's decision dismissing her complaint.[1] As we have indicated, Smith became acting mayor pursuant to N.J.S.A. 40A:9-131 and, as such, assumed all of the powers, duties, and responsibilities of mayor. Because N.J.S.A. 40:69A-43 and the Jersey City Code authorized the mayor to remove corporate counsel at the mayor's discretion, the trial court correctly concluded that Smith had authority to remove plaintiff from her position as corporation counsel and Director of the Department of Law.
Affirmed.
NOTES
[1] At oral argument, plaintiff urged that we reinstate the count of her complaint charging wrongful termination because of "political affiliation." We have several problems with this argument. First, there is no such count in plaintiff's complaint. A reference to "political affiliation" only appears in paragraph 18 of plaintiff's certification, which was submitted in support of her complaint. Second, plaintiff included the "political affiliation" argument in her trial court brief, but did not make the argument in her appellate brief under a separate point heading. Because the argument was not properly briefed, R. 2:6-2(a)(5), we need not consider it. Dougherty v. N.J. State Parole Bd., 325 N.J.Super. 549, 553, 740 A.2d 150 (App.Div.1999), certif. denied, 163 N.J. 77, 747 A.2d 285 (2000); Almog v. ITAS, 298 N.J.Super. 145, 155, 689 A.2d 158 (App.Div.1997), appeal dismissed, 152 N.J. 361, 704 A.2d 1297 (1998).